Rob Bonta
Attorney General of California
Christopher H. Findley
Supervising Deputy Attorney General
Eric Miersma
Deputy Attorney General
State Bar No. 190819
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 Telephone: (619) 738-9061
 Fax: (916) 732-7920
 E-mail: Eric.Miersma@doj.ca.gov
*Attorneys for Defendants
Whitman and Lopez-Ortega*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ERNESTO VARGAS,**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**L. LOPEZ, et al.,**<br><br>　　　　　　　　　　Defendants. | 3:23-cv-02490-TSH (PR)<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Judge:　　　Hon. Thomas S. Hixson<br>Trial Date:　October 20, 2025<br>Action Filed: May 22, 2023 |

Defendants submit the following Trial Brief in compliance with the Court's Order. [ECF No 58.]

## I.　Summary of Defendants' Theory of the Case

On May 25, 2021, Plaintiff Ernesto Vargas participated in a prison riot against inmates from a prison gang called the Bulldogs. Vargas sustained injuries, including cuts to his right knuckles indicating that Vargas punched other inmates during the riot. Before the riot, Vargas had affirmatively informed prison officials that he could program without violence on the same yard with other inmates regardless of their gang affiliation. Vargas acknowledged that he would "be expected to program with Bulldogs."

1

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

1    Vargas sued Correctional Officer Lopez-Ortega alleging he was deliberately indifferent to
2 Vargas's safety and negligent when he released Vargas to the prison recreation yard where the
3 riot occurred. Vargas also sued Correctional Lieutenant Whitman alleging he retaliated against
4 Vargas when he found Vargas guilty of a rule violation for participating in a riot. Vargas claims
5 that Lieutenant Whitman found him guilty to cover up wrongdoing by other correctional officials.
6    Defendants deny Plaintiff's claims. Vargas was not on the list of inmates that Officer
7 Lopez-Ortega was provided, which identified the inmates who could not be released to yard with
8 Bulldogs. Vargas had also affirmatively told prison officials that he could safely program with
9 Bulldogs. Vargas cannot meet the standard to show that Officer Lopez-Ortega was deliberately
10 indifferent to his safety or was otherwise negligent. Nor can Vargas meet the retaliation standard
11 against Lieutenant Whitman. To prevail, Vargas must show that Lieutenant Whitman retaliated
12 against him because of activity the First Amendment protects. Vargas's claim that Lieutenant
13 Whitman found him guilty to cover up wrongdoing by correctional officials is not First
14 Amendment activity. Also, Vargas cannot produce evidence that his First Amendment activity
15 was Lieutenant Whitman's sole motivation to find Vargas guilty of participating in a riot. To the
16 contrary, Vargas was identified as being on the yard where the riot occurred and had cuts on his
17 right knuckles indicating that Vargas punched other inmates during the riot. Accordingly,
18 Lieutenant Whitman had a legitimate correctional goal in finding Vargas guilty based on the
19 evidence presented.
20 **II.    KEY EVIDENCE**
21    The testimony of Defendants Lopez-Ortega and Whitman, and witnesses Glaze, Handley,
22 Macias, Llenos, Barajas, and McDonald will testify regarding their interactions with Plaintiff and
23 his acknowledgement that he could safely program with all inmates regardless of gang affiliation.
24 The witnesses will further testify regarding the modified program, prison procedures for yard
25 release, the disciplinary process, Plaintiff's Rules Violation Report for participating in a riot, the
26 actual events of the riot and where it took place, and Plaintiff's injuries confirming his
27 involvement in the riot.
28

2

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

Defendants will also introduce documentary evidence regarding, among other things, Plaintiff's written acknowledgement that he could program with all inmates, prison program modifications, Plaintiff's Rules Violation Report, documentation of Plaintiff's injuries, evidence relied upon by Defendant Whitman in finding Plaintiff guilty of participating in a riot, and photographs showing the yard and surrounding areas.

### III.  APPLICABLE LEGAL STANDARDS

#### A.  LIABILITY UNDER 42 U.S.C. § 1983

In order to prevail, Plaintiff must first demonstrate a violation of his federally protected constitutional rights by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Rutherford v. City of Berkeley*, 780 F. 2d 1333, 1446 (9th Cir. 1986); *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991); *Havas v. Thornton*, 609 F. 2d 372, 374 (9th Cir. 1979); *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Under section 1983, there must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by the Plaintiff. *See Monell v. Dep't of Social Services*, 426 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). Plaintiff must demonstrate that the Defendant was the "moving force" behind the constitutional deprivation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

#### B.  FIRST AMENDMENT - RETALIATION

The elements of a First Amendment retaliation claim in the prison context are: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005) (footnote omitted).

The First Amendment does not protect against adverse action taken to cover up misconduct. Vargas alleges that Lieutenant Whitman found him guilty of participating in a riot to absolve CTF officials of liability relating to the May 25 riot. But such an allegation does not raise any activity by Vargas that the First Amendment protects, such as filing a civil rights lawsuit. *See Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (an inmate-plaintiff must show "that the type of

3

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

activity he engaged in was protected under the First Amendment"). An act by prison officials to cover up malfeasance by other officials is not protected activity that supports a First Amendment retaliation claim. *Cruz v. Ford*, No. 19-cv-07649-HSG, 2020 U.S. Dist. LEXIS 1549, at *4 (N.D. Cal. Jan. 6, 2020) ("Taking adverse action in an attempt to cover up misconduct does not state a cognizable First Amendment retaliation claim."); *see also Wright v. Deforest*, No. 2:24-cv-0420 CSK P, 2024 WL 2786690, at *3 (E.D. Cal. May 30, 2024) (harassing plaintiff and covering up for other defendants is not protected activity for purposes of a retaliation claim).

The causation prong of a First Amendment retaliation claim requires a plaintiff to show that the defendant took the adverse action out of "retaliatory animus" to "silence and punish" the plaintiff because of their protected conduct, and not for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 691, 693–94 (9th Cir. 2016). Said differently, the "defendant's retaliatory animus" must be the "'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *Nieves*); *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (retaliatory motive must be the "but-for" cause of the adverse action); *see also De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 804 (8th Cir. 2022) (an inmate "must show the protected activity was a but-for cause of the adverse action, meaning that the adverse action against the plaintiff would not have been taken absent a retaliatory motive" (internal quotation marks and brackets omitted)).

Plaintiff must show that a prison official's alleged retaliatory action did not advance legitimate goals of the correctional institution. *Rizzo*, 778 F.2d at 532; *Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012). The state has a legitimate interest in maintaining institutional order, safety, and security in its prisons. *Rizzo*, 778 F.2d at 532. By considering the evidence, including Vargas's presence during the riot and the injuries to his hands, Whitman found Vargas guilty of participation in a riot, thereby advancing the legitimate institutional goals of order, safety, and security.

C.  **EIGHTH AMENDMENT – FAILURE TO PROTECT**

"The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015). "The

4

failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to [the] inmate['s] . . . safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Mere negligence does not constitute deliberate indifference. *Id.* at 835. The deliberate indifference "standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (quotation marks omitted). "But, on the other hand, he must have more than a mere suspicion that an attack will occur." *Id.* (quotation marks omitted). Blanket statements that boil down to allegations that prison is dangerous are insufficient to support a failure-to-protect claim. *See Farmer*, 511 U.S. at 838.

In *O'Brien v. Gularte*, No. 18-cv-00980-BAS-MDD, 2020 WL 3542432, at *10–11 (S.D. Cal. June 30, 2020), the district court held that a plaintiff-inmate's statement that he could safely program on the same yard as another inmate established that permitting the plaintiff to program with the other inmate did not constitute deliberate indifference. Similarly, in *Sims v. Diaz*, No. 19-cv-05445-SI, 2021 WL 1110267, at *9 (N.D. Cal. Mar. 23, 2021), the district court granted summary judgment on a deliberate indifference claim when the plaintiff-inmate did not accept a more restricted programming alternative and had stated that he could safely program at any general population prison. Officer Lopez-Ortega therefore reasonably acted when he permitted Vargas to attend yard on May 25. *See Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (holding no deliberate indifference when officials released inmates despite receiving information that the release would lead to violence).

5

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

#### D.  NEGLIGENCE

To prove a negligence cause of action, a plaintiff must prove that (1) a defendant owed them a duty, (2) a defendant breached that duty, and (3) the breach proximately caused their injuries. *John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006).

It is a "long-established principle of California negligence law that the reasonableness of a peace officer's conduct must be determined in light of the totality of the circumstances." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 632 (2013) (affirming summary judgment for police officer while noting the discretion afforded to law enforcement when addressing a situation). *See also Sisco v. California*, No. CIV S-05-0867 GEB JFM P, 2007 WL 1470145, at *12 (E.D. Cal. May 18, 2007), *findings and recommendations adopted by* 2007 WL 1771380 (June 18, 2007) (concluding that a correctional officer's decision to prematurely release inmates back to their housing unit which then led to a riot was nevertheless reasonable).

Proximate cause limits a defendant's liability to the foreseeable consequences of their actions. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1342 (1998) (holding a city's knowledge of a police officer's alcohol abuse did not make it foreseeable that the officer would have shot his fiancée). Given Vargas's statements that he could program on the yard where the riot occurred, Lopez-Ortega should not be found liable for deliberate indifference or negligence.

#### E.  QUALIFIED IMMUNITY

There will be new evidence introduced at trial regarding limitations on the California Department of Corrections and Rehabilitation and its officials ability to retain an inmate on a modified program based on the inmate's security threat group affiliation. Court orders therefore limit the ability of prison officials, including Officer Lopez-Ortega, to restrict inmate access to yard based on an inmate's security threat group affiliation. Based on this evidence, Defendants intend to move at the close of evidence, under Rule 50(a), for judgment as a matter of law. In addition to a motion on the merits, Defendants also intend to move under the doctrine of qualified immunity.

Qualified immunity protects state officials when their conduct does not violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S.

6

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

1  800, 818 (1982). The doctrine intends to take into account the real-world demands on officials to
2  allow them to act "swiftly and firmly" in situations where the rules governing their actions are
3  often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir.
4  2009) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). To determine whether an official is
5  entitled to qualified immunity, courts must consider whether the official's conduct violated a
6  constitutional right, and whether that right was "clearly established" at the time of the alleged
7  misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address either prong of
8  the analysis first. *Id.* at 236. Courts should resolve qualified immunity "at the earliest possible
9  stage in litigation." *Id.* at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

10  "A clearly established right is one that is sufficiently clear that every reasonable official
11  would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11
12  (2015) (per curiam) (internal quotation marks omitted). The Supreme Court "has repeatedly told
13  courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*,
14  584 U.S. 100, 104 (2018) (per curiam). Instead, "the clearly established right must be defined
15  with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42–43 (2019) (per curiam) (finding
16  error and remanding because the "formulation of the clearly established right was far too
17  general").

18  "This exacting standard gives government officials breathing room to make reasonable but
19  mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate
20  the law." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (omitting
21  brackets and quotation marks) (an officer "cannot be said to have violated a clearly established
22  right unless the right's contours were sufficiently definite that any reasonable official in his shoes
23  would have understood that he was violating it, meaning that existing precedent placed the
24  statutory or constitutional question beyond debate" (omitting brackets, quotation marks, and
25  internal citations)). While qualified immunity does not "require a case directly on point for a right
26  to be clearly established, existing precedent must have placed the statutory or constitutional
27  question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (omitting brackets and quotation
28  marks) (reversing denial of qualified immunity because appellate panel erroneously "failed to

7

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

identify a case where an officer acting under similar circumstances as [the officer] [ ] was held to have violated the Fourth Amendment").

"The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (per curiam). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 580 U.S. at 79 (quotation marks omitted) (citing recent reversal of several cases because of the importance of qualified immunity to "society as a whole" and qualified immunity "is effectively lost if a case is erroneously permitted to go to trial"). The party contesting qualified immunity must show that the law was clearly established at the time of the alleged violation. *Davis*, 468 U.S. at 197.

### F. PUNITIVE DAMAGES

The standards of proof for punitive damages are different under federal and state law. Under federal law, Plaintiff must prove more than a violation of his Eighth or First Amendment rights to recover punitive damages. In a § 1983 action, punitive damages are recoverable only if the defendant intended to violate federal law, or acted in a reckless or callous disregard of the plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 51 (1983). It is not enough that a defendant may have acted in an objectively unreasonable manner; their subjective state of mind must be assessed. *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989). Where there is no evidence that a defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991).

To recover punitive damages under a state-law claim for negligence, the plaintiff must show by clear and convincing evidence that the defendants acted with oppression, fraud, or malice. Cal. Civ. Code § 3294.

### G. PROCEDURAL AND EVIDENTIARY ISSUES

Defendants anticipate the following procedural and evidentiary issues as set forth in their Motions in Limine as follows: (1) evidence that Plaintiff Vargas was not afforded due process; (2) lay opinion testimony regarding medical or mental-health diagnoses, nature of injuries, and injury causation; (3) mental or emotional damages from Lieutenant Whitman; (4) evidence that

8

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

the State may pay the judgment, or reimburse Defendants, if a judgment is entered against them; (5) references to other prison riots; (6) references to a "Code of Silence" amongst correctional officials or "The Green Wall"; and (7) certain of Plaintiff Vargas's exhibits, which are largely irrelevant, prejudicial, inadmissible hearsay, and would likely confuse the issues. Defendants further move in limine to (8) admit evidence that Vargas and his incarcerated non-party witnesses have felony convictions and the length of the sentences for those convictions; (9) require Vargas to be restrained during trial; and (10) bifurcate the liability and punitive damages phases of trial.

In addition, Defendants intend to testify that they would not take adverse action against an inmate because it could cost them their job.  In criminal trials, the prosecutor is barred from vouching for an officer's credibility.  In civil trials, an attorney may not vouch for their clients' credibility using evidence outside the record.  But there is no bar in civil trials of using evidence in the record to argue credibility.  "During closing argument in a civil case, counsel is permitted to make inferences and advance plausible argument[s] in light of the record.  (Internal citation omitted.)  By contrast, inferences unsupported by the evidence are improper." *Draper v. Rosario*, 836 F.3d 1072, 1083-84 (9th Cir. 2016). *See also Solis-Diaz v. Tompkins*, No. 2:12-cv-0619-JAD-GWF, 2017 WL 4273102, 2017 U.S. Dist. LEXIS 157194, at *5 (D. Nev. Sep. 25, 2017) ("The Ninth Circuit clarified the scope of improper vouching last year in *Draper v. Rosario*. It explained that there are two kinds of improper vouching in closing arguments. The first—which is a problem only in criminal cases—is when the prosecutor places 'the prestige of the government behind a witness through personal assurances of the witness's veracity.' The second kind of vouching, 'problematic in both civil and criminal trials,' is 'relying on evidence outside the record.'"). Accordingly, Defendants may testify that if they were untruthful in an investigation or court proceeding, they could lose their jobs.

///
///
///
///
///

9

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

| | | |
|---|---|---|
| 1 | Dated: August 21, 2025 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | CHRISTOPHER H. FINDLEY<br>Supervising Deputy Attorney General |
| 4 | | |
| 5 | | */s/ Eric Miersma* |
| 6 | | ERIC MIERSMA<br>Deputy Attorney General |
| 7 | | *Attorneys for Defendants* |
| 8 | SF2023401544<br>85303034.docx | |

10

Defs.' Trial Brief  (3:23-cv-02490-TSH (PR))

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Vargas, Ernesto (V12122) v. L. Lopez, et al.** | No. | **3:23-cv-02490-TSH (PR)** |

I hereby certify that on <u>August 21, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' TRIAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 21, 2025</u>, at San Diego, California.

| | |
|---|---|
| S. Garcia | *S. Garcia* |
| Declarant | Signature |

SF2023401544
85305888.docx