JOHN S. WORDEN (SBN 267516)
jsworden@venable.com
MICHAEL T. GLUK (SBN 326670)
mtgluk@venable.com
ZOE GALLAGHER (SBN 355326)
zgallagher@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:   415.653.3750
Facsimile:   415.653.3755

*Attorneys for Plaintiff*
*Ernesto Vargas*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO VARGAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>L. LOPEZ, et al.,<br><br>　　　　Defendants. | Case No. 3:23-cv-02490-TSH<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Trial Date: October 20, 2025<br>Time: 9:30 a.m.<br>Courtroom: E; 15th Floor<br><br>Judge: Hon. Thomas S. Hixson<br>Action Filed:   May 22, 2023 |

Plaintiff Ernesto Vargas submits this trial brief pursuant to Section H of the Court's Case Management Order, ECF No. 58.

## I. INTRODUCTION

Mr. Ernesto Vargas is currently incarcerated at Correctional Training Facility ("CTF") in Soledad, California. He asserts two claims under 42 U.S.C. section 1983 against Defendants Lopez-Ortega and Whitman, correctional officers at CTF during the relevant time, for violating his First and Eight Amendment rights. Mr. Vargas also asserts a negligence claim against Defendant Lopez-Ortega under California law.

This trial brief (1) summarizes Plaintiff's theory of the case; (2) identifies key evidence, and (3) provides the applicable legal standard under Ninth Circuit authority for all controlling issues of law, and (4) identify foreseeable procedural and evidentiary issues.

## II. PLAINTIFF'S THEORY OF THE CASE

The California Department of Corrections and Rehabilitation (CDCR), and the CTF specifically, have a history of gang-related violence. In 2020, CTF had various policies in place to keep individuals associated with rival gangs separate from one another. In particular, CTF had policies aimed to keep Bulldogs-affiliated inmates separate from other inmates because, in the words of Defendant Lopez-Ortega, "every time the Bulldogs would come out, they would just fight." As such, the CTF utilized a Yard rotation schedule to enforce separation of gangs. On May 25, 2021, Defendant Lopez-Ortega disregarded that Yard rotation schedule, and instead forced Mr. Vargas to attend "mandatory" Yard, despite the fact that more than fifty Bulldogs-affiliated inmates stood on the Yard barking in anticipation of what everyone knew would be a fight. Mr. Vargas begged to stay inside E-Wing, but he was refused. He walked to the Yard alongside his peers, and once on the Yard, Sergeant Glaze—by his own admission—closed the door behind him so he could not flee. After suffering a broken nose, dislocated shoulder, and lacerations to the face and body in the attack, Defendant Whitman added insult to injury, finding Mr. Vargas guilty of a Rules Violation Report ("RVR") for "participating in a riot." At the hearing where Mr. Vargas appealed the guilty finding, Defendant Whitman told Mr. Vargas that if he found him not guilty, he would get in trouble with his colleagues, and that "had [Mr. Vargas] not written [the May 25, 2021 attack] up, I probably would have dismissed it." To no

one's surprise, Defendant Whitman refused to dismiss the RVR.  Consequently, sixty-one (61) days were added to Mr. Vargas's sentence, and his chances of parole were diminished.

### III.   KEY EVIDENCE

Testimony of Plaintiff Ernesto Vargas will illustrate that on May 25, 2021, he did not want to go out to the prison yard because he reasonably feared of his safety. Plaintiff's testimony will underscore that despite his request to stay in his cell, Defendant Lopez-Ortega required him to attend yard, where Plaintiff was brutally attacked and suffered serious injuries.  The testimony of Berlan Dicey and David Falcon will corroborate Plaintiff's testimony.  Plaintiff will also testify that Defendant Whitman admitted that he was denying Plaintiff's appeal of the RVR in retaliation for the grievance that Plaintiff filed.

Plaintiff will also introduce documentary evidence regarding the known history of fights between inmates at CTF, the risk of releasing prisoners into the yard with Bulldogs-affiliated inmates, and the fact that the Bulldogs-affiliated inmates were the aggressors during the May 25, 2021, incident.  Finally, Plaintiff will introduce documentary evidence showing that Defendant Whitman did not seriously consider Plaintiff's appeal, and instead found Plaintiff guilty of the RVR to protect his colleagues.

### IV.   APPLICABLE LEGAL STANDARDS

#### a.   Mr. Vargas's Section 1983 Claims Against the Defendants

Officers are not entitled to the protections of qualified immunity when their conduct violates a clearly established constitutional right, particularly where a reasonable official in the same situation would have known that their actions were unlawful. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).  "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right.'" *David v. Kaulukukui*, 38 F.4th 792, 177 (9th Cir. 2022) (citing *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021)).  While it is true that "[t]his exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law," it is not limitless. *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (quoting *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015)) (internal

quotations omitted).  Indeed, "[t]he purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  The purpose is *not* to give officers carte blanche authority to violate a prisoner's rights without fear of ramification.  *Id.*

### b. Mr. Vargas's Eighth Amendment Failure to Protect Claim Against Defendant Lopez-Ortega

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety and wellbeing of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citing *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  Indeed, "having stripped [inmates] of virtually every means of self-protection and foreclose[ing] their access to outside aid, the government and its officials are not free to let the state of nature take its course."  *Id.*  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Id.* at 857 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This includes a duty "to protect prisoners from violence at the hands of other prisoners."  *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).

An officer violates the Eighth Amendment when "((1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  Whether Lopez "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842 (a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("much like recklessness in criminal law, deliberate indifference … may be shown by circumstantial evidence.").

### c. Mr. Vargas's California Law-Based Negligence Claim Against Defendant Lopez-Ortega

To prove negligence, a plaintiff must show that (1) a defendant owed them a duty, (2) a defendant breached that duty, and (3) the breach proximately caused their injuries. *Collins v. Cnty. of San Diego*, 60 Cal. App. 5th 1035, 1048-49 (2021) (citation omitted). Plaintiff need not provide evidence supporting each element of his negligence claim to survive summary judgment. *Raven H. v. Gamette*, 157 Cal. App. 4th 1017, 1021 (2007). **First**, California law is clear that there exists a special relationship between a jailer and a prisoner giving rise to a duty of care to protect the prisoner from foreseeable harm inflicted by a third party. *See, e.g.*, *Giraldo v. Dept. of Corrs. & Rehab.*, 168 Cal. App. 4th 231, 250 (2008) ("important factors in determining whether a relationship is 'special' include vulnerability and dependence. Prisoners are vulnerable. And dependent. Moreover, the relationship between them is protective by nature, such that the jailer has control over the prisoner, who is deprived of the normal opportunity to protect himself from harm inflicted by others."). **Second**, whether an officer breached their duty "is determined in light of the totality of the circumstances." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 632 (2013) (internal citation omitted). **Third**, "[f]oreseeability is determined in light of all the circumstances and does not require prior identical events or injuries." *J.H. v. Los Angeles Unified School Dist.*, 183 Cal. App. 4th 123, 146 (2010).

### d. Mr. Vargas's First Amendment Retaliation Claim Against Defendant Whitman

"Of fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances.'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citing *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). This "bedrock constitutional guarantee" is the primary "viable mechanism to remedy prison injustices." *Id.* As such, a prisoner suing prison officials for retaliation need only allege the following:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,[1] and (5) the action did not reasonably advance a

---

[1] A plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered

legitimate correctional goal.

*Rhodes*, 408 F.3d at 567-68.[2] **First**, the plaintiff must claim that the defendant took an adverse action against the plaintiff. *Rhodes*, 408 F.3d at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Indeed, there "mere threat of harm can be an adverse action." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). **Second**, to prevail on his retaliation claim, Plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor in the defendant's decision." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). "To show the presence of this element on a motion for summary judgment, [Plaintiff] need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Whitman's] intent' in issuing the warning." *Brodheim*, 584 F.3d at 1271 (citing *Bruce v. Ylst*, 351 F.3d at 1289). **Third**, a Plaintiff must allege that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). There is no question that an inmate's right to file a staff complaint is protected. *See, e.g.*, *Rhodes*, 408 F.3d at 567 ("[o]f fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances'"); *Brodheim*, 584 F.3d at 1271, n.4 (actions taken pursuant to a prison grievance process are protected activities); *Watison*, 668 F.3d at 1114 ("[t]he filing of an inmate grievance is protected conduct."). **Fourth**, "[a]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (citing *Rhodes*, 408 F.3d at 568-69). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is 'more than minimal.'" *Watison*, 668 F.3d at 1114 (citing *Brodheim*, 584 F.3d at 1269 and *Rhodes*, 408 F.3d at 568 n.11). **Finally**, the fifth element requires a showing that the

---

some other harm. *Rhodes*, 408 F.3d at 568 n.11.

[2] Ninth Circuit courts have also described this standard, more simply, as requiring a showing that an inmate "was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir. 1994*)* (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).

challenged action did not advance a legitimate correctional goal. *See, e.g.*, *Rhodes*, 408 F.3d at 568; *Brodheim*, 584 F.3d at 1271-72. A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were "unnecessary to the maintenance of order in the institution." *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)

## V. FORESEEABLE PROCEDURAL AND EVIDENTIARY ISSUES

### a. Procedural Issues

Plaintiff does not anticipate there being procedural issues, particularly given that Plaintiff stipulated to bifurcating the trial into two portions—one for liability and compensatory damages, and another for punitive damages.

### b. Evidentiary Issues

Mr. Vargas is concurrently filing a motion *in limine* allowing Mr. Vargas to wear civilian clothes to trial in lieu of prison garb. Mr. Vargas also anticipates opposing most, if not all, of the motions *in limine* filed by Defendants.

## VI. CONCLUSION

Mr. Vargas appreciates the opportunity to present his claims and evidence to the jury.

Dated: August 21, 2025                               VENABLE LLP

                                                     */s/ Zoe E. Gallagher*
                                             By:     Zoe E. Gallagher
                                                     John S. Worden
                                                     Michael Gluk

                                                     *Attorneys for Plaintiff*
                                                     *Ernesto Vargas*

# PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 101 California Street, Suite 3800, San Francisco, CA 94111.

On August 21, 2025, I served a copy ☑ / original ☐ of the foregoing document(s) described as **PLAINTIFF'S TRIAL BRIEF** on the interested parties in this action addressed as follows:

| | |
|---|---|
| Christian M. Georgely | *Counsel for Defendants L. Lopez and C. Whitman* |
| Eric J. Miersma | |
| ATTORNEY GENERAL OF CALIFORNIA | |
| 1300 I Street, Suite 125 | |
| Sacramento, CA 95814 | |
| E-mail: Christian.Georgely@doj.ca.gov | |
| Eric.Miersma@doj.ca.gov | |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on August 21, 2025.

                                                */s/ Zoe E. Gallagher*
                                                   Zoe E. Gallagher