1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNESTO VARGAS,

              Plaintiff,

    v.

L. LOPEZ, et al.,

           Defendants.

Case No.  23-cv-02490-TSH

**ORDER RE:  MOTIONS IN LIMINE**

Re: Dkt. Nos. 67, 68

## I.    INTRODUCTION

      Plaintiff Ernesto Vargas, an inmate at the Correctional Training Facility ("CTF") in Soledad, California, brings this case under 42 U.S.C. § 1983 and California state law, against Defendants Correctional Officer L. Lopez-Ortega and Correctional Lieutenant C. Whitman (collectively, "Defendants").  ECF No. 1.  The case is set to proceed to jury trial on October 20, 2025, on three claims, two against Lopez-Ortega and one against Whitman.  ECF No. 71 ("Joint Pretrial Statement").  Pending before the Court are eleven motions *in limine*, one from Vargas and ten from Defendants.  ECF Nos. 67, 68.  The Court heard oral argument at the Pretrial Conference on October 2, 2025, and now issues the following order.[1]

## II.    BACKGROUND

      The facts of this case are well known to the parties, and the Court has previously summarized this case's background in its summary judgment order.  ECF No. 56, at 1–10; *see Vargas v. Lopez*, No. 23-cv-02490-TSH, 2025 WL 660193 (N.D. Cal. Feb. 28, 2025).  The Court incorporates by reference the factual background set forth therein.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 12.

1    Three claims will proceed to jury trial on October 20, 2025:  "an Eighth Amendment

2   failure-to-protect claim and state-law negligence cause of action against" Defendant Lopez-

3   Ortega; and "a First Amendment retaliation claim against" Defendant Whitman.  Joint Pretrial

4   Statement at 1:24–2:7.

5    In preparation for their upcoming trial, the parties each filed motions *in limine* on August

6   21, 2025.  Vargas filed one Motion *In Limine*.  ECF No. 68 ("Pl.'s Mot.").  On September 4, 2025,

7   Defendants filed an Opposition.  ECF No. 76 ("Defs.' Opp.").  Defendants filed ten Motions *In

8   Limine*.  ECF No. 67 ("Defs.' Mot.").  On September 4, 2025, Vargas filed an Opposition.  ECF

9   No. 77 ("Pl.'s Opp.").

10    ### III.   LEGAL STANDARD

11   **A.    Motions *In Limine***

12    Motions *in limine* are a "procedural mechanism to limit in advance testimony or evidence

13   in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other

14   pretrial motions, motions *in limine* are "useful tools to resolve issues which would otherwise

15   clutter up the trial."  *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

16   Accordingly, "a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely

17   within the discretion of the district court."  *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n. 4

18   (1984) (explaining that a court may rule *in limine* "pursuant to the district court's inherent

19   authority to manage the course of trials").  However, "[a] motion *in limine* is not the proper

20   vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such

21   motions has passed."  *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

22    In many instances, rulings "should be deferred until trial, so that questions of foundation,

23   relevancy, and potential prejudice may be resolved in proper context."  *United States v. Pac. Gas

24   & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016).  For example, in order to exclude

25   evidence on a motion *in limine*, "the evidence must be inadmissible on all potential grounds."

26   *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014).  Thus, denial of

27   a motion *in limine* to exclude certain evidence does not mean that all evidence contemplated by

28   the motion will be admitted, only that the court is unable to make a comprehensive ruling in

United States District Court
Northern District of California

2

1    advance of trial.  *Id.*  Moreover, even if a district court does rule *in limine*, the court may "change

2    its ruling at trial because testimony may bring facts to the district court's attention that it did not

3    anticipate at the time of its initial ruling."  *City of Pomona*, 866 F.3d at 1070; *see also Ohler v.*

4    *United States*, 529 U.S. 753, 758 n.3 (2000) ("*[I]n limine* rulings are not binding on the trial judge,

5    and the judge may always change his mind during the course of a trial.").

6    **B.    Federal Rules Of Evidence 401, 402, And 403**

7          The Federal Rules of Evidence provide that "[r]elevant evidence is admissible" unless the

8    U.S. Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by

9    the Supreme Court" provide otherwise.  Fed. R. Evid. 402.  Evidence is "relevant" if:  (1) "it has

10    any tendency to make a fact more or less probable than it would be without the evidence"; and (2)

11    "the fact is of consequence in determining the action."  *Id.* at 401.  "Irrelevant evidence is not

12    admissible."  *Id.* at 402.  A "court may exclude relevant evidence if its probative value is

13    substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing

14    the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

15    evidence."  *Id.* at 403.

16                              **IV.    DISCUSSION**

17          Vargas brings one Motion *In Limine* requesting that the Court "allow [Vargas] to wear

18    civilian clothing" at the trial.  Pl.'s Mot. at 1:2–4.

19          Defendants bring ten Motions *In Limine* requesting that the Court "exclude the following

20    evidence at trial:  (1) evidence that [Vargas] was not afforded due process; (2) lay opinion

21    testimony regarding medical or mental-health diagnoses, nature of injuries, and injury causation;

22    (3) mental or emotional damages from [Whitman]; (4) damages for loss of credits; (5) evidence

23    that the State may pay the judgment, or reimburse Defendants, if a judgment is entered against

24    them; (6) references to a 'Code of Silence,' 'Gladiator Fights,' or related concepts; and (7) certain

25    of [Vargas's] exhibits[.]"  Defs.' Mot. at 1:2–9.  Defendants further move "to (8) admit evidence

26    that Vargas and his incarcerated nonparty witnesses have felony convictions and the length of the

27    sentences for those convictions; (9) require Vargas to be restrained during trial; and (10) bifurcate

28    the liability and punitive damages phases of trial."  *Id.* at 1:10–13.

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.      Vargas's Motion *In Limine*

Vargas argues that the Court should "allow [Vargas] to wear civilian clothing" at the trial, and that counsel for Vargas will provide him with appropriate attire.  Pl.'s Mot. at 1:2–4, 4 n.1.  Defendants contend that Vargas should not be permitted to wear civilian clothes because (1) "the jury will know Vargas is a prisoner"; (2) the "trial is a unique opportunity for Vargas to escape federal detention and deportation"; and (3) "Vargas's criminal history and Mexican Mafia membership indicates he would be willing to use force in an escape attempt."  Defs.' Opp. at 1:24–25, 3:18–19, 4:23–25.  Defendants request that if the Court permits Vargas to wear civilian clothes, "the Court order Vargas to be restrained in the manner in which he will be transported from CTF to the courthouse" to "offset the risk of escape."  *Id.* at 2:9–12.

Requiring a criminal defendant to appear at trial in prison attire prejudices that defendant because "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment."  *Estelle v. Williams*, 425 U.S. 501, 504–05 (1976).  Courts in this circuit have extended the reasoning in *Estelle* to in-custody plaintiffs in civil cases, holding that the constant visual reminder of prison attire prejudices the in-custody plaintiff.  *E.g., Seals v. Mitchell*, No. CV-04-3764-NJV, 2011 WL 1399245, at *8 (N.D. Cal. Apr. 13, 2011).

Here, the Court finds that requiring Vargas to appear at trial in prison attire would unfairly prejudice Vargas.  *See id.* ("The Court grants Plaintiff's request to appear in civilian clothing during his jury trial due to the likelihood of prejudice that would result should Plaintiff be required to appear in his prison clothing."); *Lyons v. Leonhardt*, No. 3:05-cv-400-JCM(VPC), 2013 WL 3807996, at *3 (D. Nev. July 19, 2013) (same); *see also Starkgraf v. White*, No. 3:23-cv-05593-DGE, 2025 WL 1115438, at *7 (W.D. Wash. Apr. 15, 2025) ("Courts have held that requiring a civil plaintiff to wear prison clothing creates potential juror bias that would be inescapable.") (cleaned up).

Defendants' arguments for requiring Vargas to appear in prison clothing rest on pure speculation.  Indeed, Defendants point to no evidence showing that Vargas has attempted or planned to escape or that he would use force to escape.  Nor are Defendants' arguments based on safety concerns.  *Cf. Estelle*, 425 U.S. at 505 (explaining that in contrast to physical restraints,

"compelling an accused to wear jail clothing furthers no essential state policy").  Finally, that the jury will know Vargas is a prisoner does not mitigate the risk of prejudice to Vargas from the "constant reminder" of Vargas's in-custody status.  *Cf. id.* at 504–05; *see also Lyons*, 2013 WL 3807996, at *3 (finding sufficient reason to grant plaintiff's request to wear civilian clothing even though "the jury may not be prejudiced against plaintiff if he is wearing prison clothing because the factual circumstances underlying plaintiff's allegation readily demonstrate that plaintiff has already been deprived his liberty").

Moreover, *Tunoa v. Perez*, cited to by Defendants, does not move the needle.  Defs.' Opp. at 4:11–12 (citing 700 F. App'x 741 (9th Cir. 2017)).  *Tunoa* stands for the unremarkable proposition that requiring an in-custody plaintiff to wear prison attire when the jury is aware of that plaintiff's custody status does not constitute a *per se* violation of procedural due process.  *Tunoa*, 700 F. App'x at 741–42.  However, the *Tunoa* Court emphasized that a district court has wide discretion in deciding whether to require an in-custody plaintiff to wear prison attire.  *Id.* at 741.

Accordingly, the Court **GRANTS** Vargas's Motion *in Limine*.  The Court **ORDERS** that Varga shall be allowed to wear civilian clothes during the trial.  The Court **DENIES** Defendants' request that Vargas be restrained at trial in the manner in which he will be transported.  Vargas's counsel will be responsible for bringing Vargas's civilian clothes to the Unites States Marshal Service each morning before trial.

## B.    Defendants' Motions *In Limine*

Overall—in their ten Motions *In Limine*—Defendants seek to exclude evidence, to admit evidence, require that Vargas be restrained during trial, and to bifurcate the trial.  *See generally* Defs.' Mot.  The Court addresses each of Defendants' Motions *In Limine* in turn below.

### 1.    Motion *In Limine* No. 1

Defendants argue that the Court "should preclude references and evidence that Vargas was not afforded due process regarding the participation in a riot rules violation" because it "is not relevant to Vargas's claims" and because of the "danger of unfair prejudice, confusion, and undue delay[.]"  Defs.' Mot. at 3:1–4:16.  Vargas contends that Whitman's handling of Vargas's rules

United States District Court
Northern District of California

1    violation report ("RVR") appeal is relevant to his retaliation claim.  Pl.'s Opp. at 2:1–28.

2         Here, the Court finds that the evidence is relevant because evidence that Vargas was not

3    afforded due process during his RVR appeal makes it more probable that Whitman used the appeal

4    to retaliate against Vargas.  Fed. R. Evid. 401.  The Court finds that evidence that could be used to

5    show that Vargas was not afforded due process is admissible under Rule 403 because it is central

6    to his retaliation claim and would not cause Defendants unfair prejudice.  Pl.'s Opp. at 2:14–17.

7    In other words, "the facts regarding Whitman's handling of [Vargas's] RVR appeal" could prove

8    both a claim for retaliation and a due process violation.  *Id.* at 2:23–25.  As such, the Court agrees

9    with Vargas that he "cannot be prohibited from introducing evidence that (a) Defendants lacked

10   sufficient evidence to uphold the RVR violation, (b) [Vargas] was, in fact, innocent of the conduct

11   for which the RVR was purportedly issued, and (c) [Vargas] was injured as a result of Whitman

12   improperly denying [Vargas's] RVR appeal" because it proves elements of his retaliation claim.

13   *Id.* at 2:23–28.

14        However, the Court finds that "references to an unpled due process violation" are

15   inadmissible under Rule 403.  Defs.' Mot. at 3:23–25.  Vargas does not bring a claim for violation

16   of procedural due process under the Fourteenth Amendment.  *See generally* Compl.  Thus,

17   because Vargas need not prove a due process violation, the probative value of any references to a

18   violation of his due process are "substantially outweighed by a danger of confusing the issues and

19   misleading the jury."  Defs.' Mot. at 4:10–13; *see United States v. Johnson*, 89 F.4th 997, 1009

20   (7th Cir. 2024) ("The more probative the evidence, the more the court will tolerate some risk of

21   prejudice, while less probative evidence will be received only if the risk of prejudice is more

22   remote.") (cleaned up).

23        Accordingly, the Court **GRANTS** Defendants' Motion *in Limine* No. 1 **IN PART** and

24   **DENIES** it **IN PART**.  Vargas shall not reference that "Whitman's conduct deprived [him] of his

25   due process rights."  Pl.'s Opp. at 2:14–17.  However, Vargas may introduce the evidence

26   discussed above.

27

28

United States District Court
Northern District of California

1          **2.      Motion *In Limine* No. 2**

2          Defendants argue that the Court should exclude testimony from Vargas and his witnesses

3   (1) "that addresses medical or mental-health causation, diagnosis, inferences, or prognosis

4   associated with the May 25, 2021 riot or subsequent rules violation proceedings" and (2) "relating

5   to opinions or inferences from any medical records, medical conditions, or alleged injuries without

6   the necessary personal knowledge or expertise."  Defs.' Mot. at 4:17–5:27.

7          Vargas contends that (1) "Rule 701 plainly allows [Vargas] to testify to what he saw or felt

8   relating to his medical needs and condition"; and (2) Vargas "can testify to his *understanding* of

9   any medical diagnoses or treatments he received, and may therefore testify to how he believes or

10  opines his injuries were caused."  Pl.'s Opp. at 3:1–7:17 (emphasis in original).

11         Under the Federal Rules of Evidence,

12              [a] witness may testify to a matter only if evidence is introduced
                sufficient to support a finding that the witness has personal knowledge
13              of the matter.  Evidence to prove personal knowledge may consist of
                the witness's own testimony.
14

15  Fed. R. Evid. 602.  Opinion testimony by lay witnesses is limited to one that is:

16              (a) rationally based on the witness's perception; (b) helpful to clearly
                understanding the witness's testimony or to determining a fact in
17              issue; and (c) not based on scientific, technical, or other specialized
                knowledge within the scope of Rule 702.
18

19  *Id.* at 701.  A qualified expert may testify "in the form of an opinion or otherwise" where:

20              (a) the expert's scientific, technical, or other specialized knowledge
                will help the trier of fact to understand the evidence or to determine a
21              fact in issue; (b) the testimony is based on sufficient facts or data; (c)
                the testimony is the product of reliable principles and methods; and
22              (d) the expert has reliably applied the principles and methods to the
                facts of the case.
23

24  *Id.* at 702.

25         Here, the Court finds that Vargas has personal knowledge of his own medical records,

26  medical conditions, and injuries; thus, this evidence is not inadmissible under Rule 602.  First,

27  contrary to Defendants' assertion, Vargas can lay a foundation for his medical records because he

28  has personal knowledge of his own medical records and the medical assessments described within.

United States District Court
Northern District of California

1    Defs.' Mot. at 4:17–5:27; *see* Fed. R. Evid. 602; *Edwards v. Bratton*, No. 1:13-cv-00345-EPG-PC,

2    2016 WL 1588398, at *3 (E.D. Cal. Apr. 20, 2016) ("Plaintiff may testify about his medical

3    records with the foundation that they are his medical records, and the records themselves concern

4    information given through medical assessment."). Second, Vargas has personal knowledge of "his

5    own personal experience of the May 25, 2021 attack, including how he felt before and after the

6    incident, his physical and psychological symptoms, and any limitations he has experienced since

7    the attack." Pl.'s Opp. at 3:19–25, 7:9–11; *see Gray v. Clark*, 654 F. Supp. 3d 1062, 1071 (E.D.

8    Cal. 2023) ("[Plaintiff] may testify about his own personal experiences, including how he felt

9    before and after his alleged injuries, his symptoms or any physical limitations he experienced.").

10   Vargas argues that under Rule 701, he may testify "to his own perceived physical and

11   psychological injuries and their symptoms," "descriptions of [his] injuries and symptoms,"

12   opinions on how his injuries were caused, and "the fact of his diagnoses and his understanding of

13   any medical treatment following the May 25, 2021 incident[.]" Pl.'s Opp. at 3:1–7:17. The Court

14   agrees. Under Rule 701, a plaintiff "may testify as to what he saw or felt relating to his medical

15   needs or condition[.] . . . He may also testify as to how *he believes or opines* his injuries were

16   caused. In addition, [a] [p]laintiff may testify as to *his understanding* of any medical diagnosis he

17   received from a medical professional." *Asberry v. Relevante*, No. 16-cv-01741-JLT-HBK(PC),

18   2023 WL 2563243, at *5 (E.D. Cal. Mar. 17, 2023) (internal citations omitted) (emphasis in

19   original); *see also Edwards*, 2016 WL 1588398, at *2 ("Plaintiff may testify about what he felt,

20   the extent of any injuries, and any opinions about causation based on his personal observation and

21   perception. . . . Plaintiff may testify about the causation of injuries as shown by what happened to

22   him after the incident."). However, a plaintiff "may not testify as to any medical matter which

23   requires scientific, technical, or other specialized knowledge." *Asberry*, 2023 WL 2563243, at *5;

24   *see Edwards*, 2016 WL 1588398, at *2 ("Plaintiff is not permitted to give scientific or medical

25   opinions or interpret medical records that require expert testimony or specialized knowledge

26   within the scope of Rule 702.").

27   Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion

28   *in Limine* No. 2. Vargas shall not give "testimony that goes beyond that permitted from a lay

1    witness." *Asberry*, 2023 WL 2563243, at *5.  Vargas is permitted to testify as discussed above.

2         **3.    Motion *In Limine* No. 3**

3         Defendants argue that the Court "should order that Vargas cannot recover mental or

4    emotional damages from [Whitman]."  Defs.' Mot. at 6:1–7:8.  Vargas contends that "the Court

5    already considered and rejected this argument in denying Defendants' Motion for Summary

6    Judgment."  Pl.'s Opp. at 8:26–9:5 (citing ECF No. 56, at 25).

7         Here, the Court concludes that this motion *in limine* is a belated motion for summary

8    judgment masquerading as a motion *in limine*.  Vargas alleges that he sustained "mental suffering"

9    from Whitman's violation of his Constitutional rights.  Compl. at 14; *see also* Defs.' Mot. at 6:8–

10   10 (acknowledging that Vargas alleges he sustained "serious mental and emotional trauma" from

11   Whitman's conduct.)  But Defendants did not move for summary judgment regarding their

12   argument that "[t]he PLRA prohibits recovery of damages for constitutional violations that

13   manifest as mental or emotional harm without the requisite physical injury."  Defs.' Mot. at 6:23–

14   24.  A motion *in limine* is meant to address evidentiary questions and is not a substitute for

15   summary judgment; thus, Defendants' use of a motion *in limine* here is procedurally improper.

16   *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-JST, 2016 WL 6246736, at *3

17   (N.D. Cal. Oct. 26, 2016) (quoting 75 Am. Jur. 2d Trial § 44) ("The use of motions *in limine* to

18   summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not

19   to allow motions *in limine* to be used as unwritten and unnoticed motions for summary judgment

20   or motions to dismiss.").

21        However, even considering Defendants' motion on the merits, the Court finds it should be

22   denied.  The Court agrees with Vargas that the PLRA does not bar him "from seeking damages for

23   emotional and psychological injury resulting from Whitman's violation of his First Amendment

24   rights."  Pl.'s Opp. at 10:9–11; *see Percelle v. Pearson*, No. 12-cv-05343-TEH, 2016 WL

25   6427883, at *4 (N.D. Cal. Oct. 31, 2016) ("Where Plaintiff's complaint raises a First Amendment

26   claim, he need not allege physical injury as a precondition for recovering damages, even if those

27   damages are for mental and emotional injury.").

28        Accordingly, the Court **DENIES** Defendants' Motion *in Limine* No. 3.

### 4.    Motion *In Limine* No. 4

Defendants argue that the Court "should exclude evidence that Vargas sustained a credit loss because of [Whitman] because it "is irrelevant to Vargas's claims and would risk confusing the jury." Defs.' Mot. at 7:9–17. Vargas contends that "evidence relating to the loss of the 61-day credit and the resulting harm to [Vargas] is directly relevant to damages." Pl.'s Opp. at 11:13–14.

Here, the Court finds that information relating to Vargas's 61-day credit loss is relevant to his claim for damages. Defendants assert that "Vargas never suffered any injury associated with the credit loss." Defs.' Mot. at 7:12. But that is not for Defendants to decide—Vargas alleges that he was harmed by the credit loss because he suffered psychological harm and harm because his "incarceration is likely to be prolonged as a result of Defendants upholding the RVR violation." Pl.'s Opp. at 10:19–11:12. A plaintiff is entitled to compensatory damages for "unconstitutional imprisonment" and the resulting "loss of liberty." *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013). Because under Vargas's damages theory, the existence of the credit loss makes it more probable that Vargas was injured by the threat of or existence of prolonged incarceration, the evidence is relevant. Fed. R. Evid. 401. Moreover, because Defendants do not explain how this evidence would "confuse the jury," they fail to show that the evidence is inadmissible under Rule 403. Defs.' Mot. at 7:9–17.

Accordingly, the Court **DENIES** Defendants' Motion *in Limine* No. 4.

### 5.    Motion *In Limine* No. 5

Defendants argue that the Court "should preclude Vargas from presenting testimony that Defendants may be indemnified by the State if a judgment is rendered against them, because such evidence is irrelevant and prejudicial." Defs.' Mot. at 7:18–8:18. Vargas contends that he should "be permitted to introduce evidence of the State's indemnification obligations for the following purposes: (1) to rebut testimony that Defendants and other CTF employees are ordinarily liable for harm to inmates within their custody, and (2) to the extent such evidence is relevant to Defendants' knowledge, intent, and/or motives." Pl.'s Opp. at 12:15–19.

The State of California is generally required to indemnify its employees, at their request, in litigation arising from the course and scope of their employment. Cal. Gov't Code § 825(a). But

the State is not obligated to indemnify its employees for punitive or exemplary damages. *Id.* at §

825(b). Under the Federal Rules of Evidence,

> [e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Fed. R. Evid. 411. "Evidence of indemnification is generally inadmissible but may be used to

show prejudice or bias of a witness." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986,

1014 (9th Cir. 2008) (citing Fed. R. Evid. 411).

Here, the Court finds that information regarding whether the State would pay any verdict

or reimburse Defendants is not relevant to Vargas's claims, and it is likely that any such evidence

"is prejudicial because a jury is more inclined to deliver a verdict against a defendant if it believes

that he is indemnified as opposed to the defendant alone being required to satisfy the judgment."

*Jacobs v. Alexander*, No. 1:05-cv-01625-SAB(PC), 2015 WL 8010537, at *4 (E.D. Cal. Dec. 7,

2015); *see also Washington v. Samuels*, No. 1:12-cv-01404-SAB(PC), 2016 WL 3999990, at *4

(E.D. Cal. July 25, 2016) (same); *Williams v. Steglinkski*, No. 1:12-cv-00786-SAB, 2016 WL

1183134, at *2 (E.D. Cal. Mar. 28, 2016) (same). However, evidence of indemnification may be

introduced to impeach Defendants should they "elicit testimony or argument falsely suggesting

that they will personally be liable for paying any judgment or that payment of such a judgment

will cause financial strain[.]" Pl.'s Opp. at 11:18–21; *see* Fed. R. Evid. 411 (permitting evidence

of indemnification for purposes other than proving fault).

Accordingly, the Court **GRANTS** Defendants' Motion *in Limine* No. 5. Any evidence

regarding payment or reimbursement by the State of California shall be excluded with the caveat

that Vargas may introduce such evidence for impeachment or in rebuttal depending on whether

Defendants open the door to this subject.

### 6. Motion *In Limine* No. 6

Defendants argue that the Court should exclude "evidence or references" (1) "to a 'code of

silence,' [or] a 'green wall,'"; (2) to "prison officials orchestrating a 'gladiator fight,'" (3) "that

[Whitman] was acting as part of a conspiracy to cover up for other prison officials"; and (4) "that

11

1    [Lopez-Ortega] was acting as part of a conspiracy to force prisoners into staged fights" because

2    "Vargas lacks personal knowledge to support these inflammatory accusations, the accusations are

3    irrelevant, and the accusations would be unduly prejudicial and misleading." Defs.' Mot. at 8:19–

4    11:7.

5        Vargas contends that (1) he "does not intend to use the phrase 'code of silence' or 'green

6    wall' at trial"; (2) he intends to discuss "gladiator-style fights and Lopez-Ortega's involvement in

7    staging the one that occurred on May 25, 2021," because they are central to his case; and (3)

8    Whitman told Vargas that Whitman was helping "absolve prison officials from liability" and that

9    Whitman's statements are admissible as party admissions. Pl.'s Opp. at 12:20–14:10.

10       Here, because Vargas does not challenge the inadmissibility of the statements "code of

11   silence" or "green wall," the Court finds that it is appropriate to exclude references to these

12   concepts.

13       The Court finds that evidence and references to "gladiator-style fights and Lopez-Ortega's

14   involvement in staging the one that occurred on May 25, 2021," are relevant, based on Vargas's

15   personal knowledge, and admissible under Rule 403. *Id.* at 13:11–14:4. First, contrary to

16   Defendants' assertion, Vargas has personal knowledge of evidence supporting his theory that

17   Lopez-Ortega was acting to force prisoners into staged gladiator-style fights and that Vargas was

18   involved in a gladiator fight on May 25, 2021. Defs.' Mot. at 9:10–13. Defendants acknowledge

19   that Vargas alleges that "Lopez-Ortega told him it was go time, the Bulldogs were waiting for

20   him, that he should handle his business with the Bulldogs, and it was mandatory yard time." *Id.* at

21   8:28–9:3. And Vargas intends to present evidence (1) that Lopez-Ortega testified about "the

22   Bulldog-affiliated inmates' propensity for violence," (2) of "the frequency with which attacks of

23   this nature took place," and (3) of "the presence of gurneys and other medical equipment around

24   the yard in advance of yard release[.]" Pl.'s Opp. at 13:20–28. Indeed, Vargas's consistent

25   allegations regarding Lopez-Ortega's involvement "in a staged gladiator-style fight/attack"

26   demonstrate that they are central to his case. *E.g.,* Compl. ¶ 31; *see* Pl.'s Opp. at 13:11–16; *contra*

27   Defs.' Mot. at 8:27–28 ("Vargas never made any allegations about a 'code of silence' among

28   officials in his complaint."). Therefore, Vargas has personal knowledge of facts proving Lopez-

United States District Court
Northern District of California

12

1    Ortega's involvement in staging the gladiator fight that occurred on May 25, 2021, which Vargas

2    experienced.  Pl.'s Opp. at 14:1–4; *see* Fed. R. Evid. 602.  Second, because evidence that Lopez-

3    Ortega was involved in staging gladiator fights between prisoners makes it more probable that

4    "Lopez-Ortega knew that sending [Vargas] to the yard put him at risk," it is relevant.  Pl.'s Opp. at

5    13:17–21; Fed. R. Evid. 401.  Finally, this evidence is fundamental to proving the elements of

6    Vargas's claims against Lopez-Ortega—because the evidence is "highly relevant, any risk of

7    prejudice or other dangers must be very high to justify exclusion."  *Sidibe v. Sutter Health*, 103

8    F.4th 675, 699 (9th Cir. 2024); *see* Pl.'s Opp. at 13:17–21.  Defendants make a blanket assertion

9    that they "would be unduly prejudiced by the inclusion of any references to . . . gladiator fights[.]"

10    Defs.' Mot. at 10:21–11:3.  But "Defendants do not cite to a *single* case to support their contention

11    that such references are inadmissible."  Pl.'s Opp. at 13:11–16 (emphasis in original).  Therefore,

12    Defendants fail to show that the evidence's probative value is substantially outweighed by a

13    danger of unfair prejudice.  Fed. R. Evid. 403.

14        The Court finds that evidence and references to Whitman's involvement in covering up

15    prison officials' conduct are relevant, based on Vargas's personal knowledge, and admissible

16    under Rule 403.  First, Vargas maintains that Whitman told him Whitman was helping "absolve

17    prison officials from liability."  Pl.'s Opp. at 14:5–10.  As the listener, Vargas has personal

18    knowledge of the statement made by Whitman.  Fed. R. Evid. 602.  And statements offered

19    against an opposing party that were made by the party are not considered hearsay.  Fed. R. Evid.

20    801(d)(2).  Second, in its summary judgment order, the Court previously rejected Defendants'

21    argument that the evidence is irrelevant because "such conduct does not support a First

22    Amendment retaliation claim."  Defs.' Mot. at 9:16–22; *see* ECF No. 56, at 26 ("If Lieutenant

23    Whitman used a legitimate hearing process to punish Vargas for his complaints, the use of this

24    process was not a reasonable advancement of a legitimate penological goal.").  Because evidence

25    that Whitman was acting to cover up for other prison officials when he handled Vargas's RVR

26    appeal makes it more probable that he retaliated against Vargas by denying Vargas's appeal, it is

27    relevant.  Fed. R. Evid. 401.  Finally, because Vargas has personal knowledge of Whitman's

28    statement, Defendants' argument that the evidence is inadmissible under Rule 403 because Vargas

United States District Court
Northern District of California

13

1    cannot "support such an inflammatory accusation" is moot.  Defs.' Mot. at 9:5–6.

2    Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion

3    *in Limine* No. 6.  Vargas shall not make references to a "code of silence" or a "green wall."

4    ### 7.    Motion *In Limine* No. 7

5    Defendants move to exclude thirteen of Vargas's exhibits "on authentication, relevance,

6    hearsay, character, and Rule 403 grounds, and because the witnesses lack sufficient knowledge or

7    competence to testify regarding certain of the documents."  Defs.' Mot. at 11:8–21:4.[2]

8    "Authentication is a condition precedent to admissibility."  *Orr v. Bank of Am., NT & SA*,

9    285 F.3d 764, 773 (9th Cir. 2002) (cleaned up).  To authenticate an item of evidence, "the

10   proponent must produce evidence sufficient to support a finding that the item is what the

11   proponent claims it is."  Fed. R. Evid. 901.

12   Here, as a threshold matter, the Court agrees with Vargas that Defendants' authentication

13   objections to documents that they produced in discovery are without merit.  Pl.'s Opp. at 14, n.4.

14   Vargas "is not required to have personal knowledge of the document[s], because [Defendants]

15   produced the document[s] to [Vargas] in discovery, thereby authenticating [them]."  *Siebert v.*

16   *Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (citing *Maljack Prods., Inc.*

17   *v. GoodTimes Home Video Corp.,* 81 F.3d 881, 889 n.12 (9th Cir.1996) (holding that documents

18   produced by a party in discovery were deemed authentic when offered by the party-opponent))

19   (alterations added).  Therefore, the Court rejects Defendants' authentication challenges to

20   documents they produced in discovery and does not address them again below.

21   In sum, as discussed below, the Court **GRANTS IN PART and DENIES IN PART**

22   Defendants' Motion *in Limine* No. 7.

23   ### a.    Exhibit 1:  June 4, 2021, STG Designation (VAR00013)

24   "Plaintiffs' Exhibit 1 indicates that on October 20, 2020, Vargas was identified as an

25   Associate of the Mexican Mafia."  Pl.'s Opp. at 4:21–23 (citing Declaration of Zoe E. Gallagher

26

27   ───────────────────
     [2] At the Pretrial Conference, Vargas's counsel stated that Vargas withdraws Exhibits 6, 8, 9, and
28   13 with the caveats that Vargas may introduce the evidence to rehabilitate Vargas's credibility or
     for impeachment.  Because Vargas does not completely withdraw the evidence, the Court rules on
     the merits of Defendants' objections to Exhibits 6, 8, 9, and 13.

("Gallagher Decl.") ¶ 6 (ECF No. 77-1), Ex. B-1 (Pl.'s Trial Ex. No. 1) (ECF No. 77-4)).

Defendants argue that the Court "should exclude Exhibit 1 as inadmissible hearsay, as irrelevant,

and under Rule 403," and because Vargas "fails to authenticate the exhibit." Defs.' Mot. at 11:13–

15, 12:2–4. Vargas contends that (1) the evidence is not being offered for its truth; (2) it is

relevant to whether Vargas "should have been on the Yard on May 25, 2021"; and (3) it is not

"*unfairly* prejudicial." Pl.'s Opp. at 14:16–15:23 (emphasis in original).

Hearsay is an out of court statement made by a declarant, offered to prove the truth of the

matter asserted. Fed. R. Evid. 801. Hearsay is not admissible at trial unless permitted by law or

allowed under an exception. *Id.* at 802; *see also Orr*, 285 F.3d at 778 ("In the absence of a

procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal

Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807.").

Here, the Court finds that Exhibit 1 is relevant, is not hearsay, and is admissible under Rule

403. First, Vargas intends to introduce the evidence "to show that the CDCR and CTF believed

[Vargas] to be associated with the Mexican Mafia." Pl.'s Opp. at 14:20–15:2 (citing Gallagher

Decl. ¶ 6, Ex. B-1). "[A]rticles offered not for the truth of the matter asserted but to show their

effect on the reader are not hearsay and are therefore not subject to exclusion." *United States v.

Holmes*, No. 5:18-cr-00258-EJD, 2021 WL 2044470, at *26 (N.D. Cal. May 22, 2021), *aff'd*, 129

F.4th 636 (9th Cir. 2025) (citing *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991)

(statement introduced not for the truth of the matter but rather to show the effect on the listener

was not hearsay)). Therefore, because Vargas intends to offer the evidence to show that the reader

had notice of the alleged fact that Vargas was identified as a member of the Mexican Mafia—but

not for its truth that Vargas "*actually* was an Associate of the Mexican Mafia"—it is not hearsay.

Pl.'s Opp. at 14:20–15:2 (emphasis in original); *see* Fed. R. Evid. 801. Second, because evidence

that Defendants "believed [Vargas] to be associated with the Mexican Mafia" makes it more

probable that "Lopez-Ortega made an intentional decision that placed [Vargas] at a serious risk of

harm" when Lopez-Ortega allowed Vargas to attend Yard on May 25, 2021, it is relevant. Pl.'s

Opp. at 15:3–12; Fed. R. Evid. 401. Finally, Defendants' argument that the evidence will confuse

the jury is unpersuasive because the jury will not need to "determine whether Vargas met the

United States District Court
Northern District of California

qualifications outlined in regulations" for "security group threat validation." Defs.' Mot. at 12:17–27. And Defendants' argument that the evidence is unfairly prejudicial because "a juror may base their decision as to the liability of [Defendants] on a non-party's conduct and knowledge" is unpersuasive because Vargas plans to introduce the documents to show their effect on Defendants, not on third parties. *Id.*; Pl.'s Opp. at 15:13–23; *see* Fed. R. Evid. 403.

However, the Court agrees with Defendants that Vargas must authenticate the evidence. Defs.' Mot. at 12:2–4. Exhibit 1 was produced by Vargas. Gallagher Decl. ¶ 6. Thus, Vargas bears the burden of producing evidence showing that Exhibit 1 is what Vargas claims it is. Fed. R. Evid. 901. But Vargas does not address Defendants' authentication challenge in his Opposition or point to evidence that would authenticate Exhibit 1. *See generally* Pl.'s Opp. at 14:16–15:23.

Accordingly, the Court **GRANTS** Defendants' request to exclude Exhibit 1 with the caveat that Vargas may introduce the evidence if he authenticates it at trial.[3]

### b. Exhibits 6 and 7: Government Claims Rejection and Filing (DEFS 48–50)

Defendants argue that the Court "should exclude from evidence the March 17, 2022 Government Claim Filing (DEFS 49–50) and October 25, 2022 Government Claims Rejection (DEFS 48) on the grounds that the documents contain inadmissible hearsay and are irrelevant to the claims at issue." Defs.' Mot. at 13:1–4. Vargas contends that the documents are not being introduced for their truth and that they are relevant to the issue of damages. Pl.'s Opp. at 15:14–16:7.

Here, the Court finds that Exhibit 7 is relevant and not hearsay. First, Vargas intends to introduce the evidence "to show that Vargas had to spend at least $25 as a filing fee to submit his claim." Pl.'s Opp. at 16:2–4 (citing Gallagher Decl., ¶ 6, Exs. B-6 (ECF No. 77-5), B-7 (ECF No. 77-6) (Pl.'s Trial Exs. Nos. 6, 7)). Exhibit 7 contains the statement, "Include a check or money

---

[3] At the Pretrial Conference, Vargas's counsel indicated that Vargas will substitute the version of Exhibit 1 filed previously (ECF No. 77-1) with a version produced by Defendants during discovery. As discussed at the conference, if Vargas submits a version of Exhibit 1 that was produced by Defendants, this will overcome Defendants' authentication objection to Exhibit 1. However, in ECF No. 121, Plaintiff withdraws this proposal and now says he will authenticate this exhibit at trial.

United States District Court
Northern District of California

1    order for $25, payable to the State of California."  Gallagher Decl., Ex. B-7.  Because Vargas does

2    not intend to introduce the evidence for the truth of the matter asserted—that Vargas's "claims

3    were filed and subsequently rejected"—it is not hearsay.  Pl.'s Opp. at 15:27–28; *see* Fed. R. Evid.

4    801.  Second, because evidence that Vargas was required to pay $25 to file a claim and engage in

5    the claims process makes it more probable that Vargas spent $25 to file his claim, it is relevant to

6    the issue of damages.  Fed. R. Evid. 401.  However, Exhibit 6 does not contain any information

7    regarding the $25 filing fee, and Vargas does not explain why this evidence should be admitted.

8    *See generally* Gallagher Decl., Ex. B-6.

9        Accordingly, the Court **GRANTS** Defendants' request to exclude Exhibit 6 and **DENIES**

10   Defendants' request to exclude Exhibit 7.

11        **c.**    **Exhibits 8, 9, and 13:  Grievance Documents (DEFS 51, 56–61, 83–86)**

12        Defendants argue that the Court "should exclude from evidence the February 14, 2022

13   Supplemental Grievance (DEFS 51), June 9, 2021 Appeal (DEFS 56–61), and the Second-Level

14   Response to a Grievance (DEFS 83–86) on the grounds that the documents are inadmissible

15   hearsay and irrelevant."  Defs.' Mot. at 13:21–24.  Defendants further argue that the evidence is

16   inadmissible under Rule 403 and because "Vargas lacks personal knowledge concerning their

17   creation or their subject."[4]  *Id.* at 14:19–15:5.

18        Vargas contends that (1) the Supplemental Grievance and Appeal contain Vargas's prior

19   consistent statements that are admissible to rehabilitate his credibility; and (2) the Second-Level

20   Response is not being introduced for its truth.  Pl.'s Opp. at 16:8–17:9.

21        Under the Federal Rules of Evidence, a declarant-witness's prior out of court statement is

22   admissible as non-hearsay if

23            [t]he declarant testifies and is subject to cross-examination about a
             prior statement, and the statement:
24                 . . .

25   _____

26   [4] Defendants also make a passing reference to Rule 404(b).  *See* Defs.' Mot. at 15:2–5 ("Finally,
     as outlined in Motion in Limine No. 6, the decision's specific reference to an unrelated riot and
27   yard release is inadmissible under Rule 404(b)[.]").  However, Defendants' Motion *in Limine* No.
     6 does not mention Rule 404(b), nor do Defendants elaborate on the Rule's application for this
28   evidence.  Thus, the Court does not opine on whether Rule 404(b) bars Vargas from introducing
     this evidence.

United States District Court
Northern District of California

(B) is consistent with the declarant's testimony and is offered:

(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground[.]

Fed. R. Evid. 801(d)(1).  Prior consistent statements "may be brought before the factfinder only if they properly rehabilitate a witness whose credibility has been attacked."  2014 Adv. Comm. Notes, Fed. R. Evid. 801.

Here, the Court finds that the Supplemental Grievance (Ex. 8) and Appeal (Ex. 9) are hearsay because they contain out of court statements made by Vargas that Vargas intends to introduce for their truth, that "Lopez-Ortega violated his rights."  Pl.'s Opp. at 16:11–23; *see* Fed. R. Evid. 801.  Vargas argues that the prior consistent statement exemption applies because Defendants intend "to challenge [his] credibility at trial, including by introducing evidence of his prior convictions[.]"  Pl.'s Opp. at 16:17–23.  However, as discussed below, because the Court concludes that Defendants cannot introduce evidence of Vargas's prior convictions to impeach his credibility, this exemption does not apply.  Therefore, the evidence is inadmissible hearsay.[5]

The Court finds that the Second-Level Response (Ex. 13) is relevant, is not hearsay, and is admissible under Rule 403.  First, Vargas "intends to introduce a limited portion of [Exhibit 13]" that states, "there is documented evidence wherein it has been made clear by the EME and Sureños they will never program with the Bulldogs," as "evidence that the CDCR and its employees were well aware of the ongoing issues between these two gang-related prisoner populations."  *Id.* at 16:24–17:9 (citing Gallagher Decl., ¶ 6, Ex. B-13 (ECF No. 77-12) (Pl.'s Trial Ex. No. 13, at 2)).  Articles offered to show their effect on the reader are not hearsay.  *Holmes*, 2021 WL 2044470, at *26.  Therefore, because Vargas intends to offer the evidence to show that the reader had notice of the alleged fact that the EME and Sureños stated "they will never program with the Bulldogs"—but not for its truth that the groups actually made this statement—it is not hearsay.  Pl.'s Opp. at 17:2–3; *see* Fed. R. Evid. 801.  Second, because the

---

[5] In ECF No. 121, Vargas says he will offer Exhibit 9 (now renumbered Exhibit 7) for a non-hearsay purpose at trial.  If he does so, that will overcome the hearsay problem.

evidence is not hearsay, Defendants' argument that Rule 403 precludes its admission because they would be precluded from cross-examining the declarant is moot.  Defs.' Mot. at 14:20–22.  Finally, because evidence that Defendants had knowledge of issues between the gangs makes it more probable that Defendants knew that members from different gangs should be prohibited from attending yard together, it is relevant.  Fed. R. Evid. 401.

However, the Court agrees with Defendants that Vargas can only introduce Exhibit 13 through a witness with personal knowledge of the document.  Defs.' Mot. at 14:25–15:2; *see* Fed. R. Evid. 602.  It is unclear from Exhibit 13 whether the Second-Level Response relates to Vargas, and Vargas does not address Defendants' argument that the evidence should be excluded for lack of foundation.  *See generally* Pl.'s Opp. at 16:8–17:9.  Therefore, to introduce Exhibit 13, Vargas must identify a witness who can lay a foundation for the document.

Accordingly, the Court **GRANTS** Defendants' request to exclude Exhibits 8 and 9, with the caveat that Vargas may move to introduce the evidence if Defendants open the door by attacking Vargas's credibility.  The Court **GRANTS** Defendants' request to exclude Exhibit 13 with the caveat that Vargas may introduce the evidence if he complies with Rule 602 by identifying a witness who has personal knowledge of the document.

### d.    Exhibit 10:  April 20, 2021, TCL Denial (DEFS 64)

"Exhibit 10 is a document dated April 20, 2021, wherein [Vargas's] request for temporary community leave ('TCL') was denied in part because 'Vargas is a suspected Security Threat Group (STG)-II Sureno and is also a suspected STG-I Associate of the Mexican Mafia (EME).'" Pl.'s Opp. at 17:12–16 (citing Gallagher Decl. ¶ 6, Ex. B-10 (Pl.'s Trial Ex. No. 10) (ECF No. 77-9)).  Defendants argue that the Court "should exclude Exhibit 10 as inadmissible hearsay and under Rule 403," and because it is "irrelevant."  Defs.' Mot. at 15:7–8, 26–27.  Vargas contends that the evidence is not being offered for its truth and that it would not confuse the jury.  Pl.'s Opp. at 17:10–18:4.

Here, the Court finds that Exhibit 10 is relevant, is not hearsay, and is admissible under Rule 403.  First, Vargas intends to introduce the evidence "to show Defendants' knowledge of [his] status as a suspected STG, who should have been prohibited from attending Yard on May 25,

2021." *Id.* at 17:16–18.  Articles offered to show their effect on the reader are not hearsay. *Holmes*, 2021 WL 2044470, at *26.  Thus, because Vargas does not intend to introduce the evidence for the truth of the matter asserted—that Vargas was actually a suspected or confirmed STG member—it is not hearsay.  Pl.'s Opp. at 17:16–18; *see* Fed. R. Evid. 801.  Second, because evidence that Vargas was allegedly a suspected STG member makes it more probable that "Lopez-Ortega knew or should have known that [Vargas's] safety was at risk by releasing him to the Yard to a group of hostile Bulldog-affiliated gang members," it is relevant.  Pl.'s Opp. at 18:1–3; Fed. R. Evid. 401.  Finally, Defendants' arguments that the evidence will confuse the jury are unpersuasive because the jury will not need to determine whether Vargas was a gang member or whether Vargas should have been granted temporary community leave.  Defs.' Mot. at 15:26–16:16; Pl.'s Opp. at 17:23–28; *see* Fed. R. Evid. 403.

Accordingly, the Court **DENIES** Defendants' request to exclude Exhibit 10.[6]

### e.    Exhibits 11, 21, and 26:  Medical Records (DEFS 65–79, 826)

Exhibits 11, 21, and 26 consist of Vargas's medical records.  Pl.'s Opp. at 7:18–24 (citing Gallagher Decl., ¶ 6, Exs. B-11 (Pl.'s Trial Ex. No. 11) (ECF No. 77-10), B-21 (Pl.'s Trial Ex. No. 21) (ECF No. 77-15), B-26 (Pl.'s Trial Ex. No. 26) (ECF No. 77-17)).  Defendants argue that the Court "should exclude Exhibits 11 and 21, because they contain hearsay that Vargas is not qualified to interpret," and "should exclude the medical records listed in Exhibit 26."[7]  Defs.' Mot. at 16:19–22.  Defendants further argue that the evidence is inadmissible because Vargas cannot "identify a witness with knowledge of the creation of these records," and that Exhibit 21 is irrelevant.  *Id.* at 17:9–19.  Vargas contends that Defendants' request should be denied "for the

---

[6] At the Pretrial Conference, Defendants made a new request to remove from Exhibit 10 references to the passing of Vargas's mother, arguing that these references are unfairly prejudicial under Rule 403 because they show that Vargas was not permitted to attend his mother's funeral.  As discussed at the conference, the Court **DENIES** Defendants' objection under Rule 403—because Vargas intends to introduce the evidence to show that the reader was aware of the strong belief that Vargas was an STG member, the evidence is confusing and lacks context without the references to Vargas's mother's funeral.

[7] Because the Court addresses Defendants' argument that "Vargas cannot offer expert testimony regarding these issues, because he is a lay witness" in its analysis of Defendants' Motion *in Limine* No. 2, the Court does not address this argument again here.  Defs.' Mot. at 16:25–26; *see supra*, Section IV.B.2.

reasons stated in [his] Opposition to Defendants' Motion *in Limine* No. 2." Pl.'s Opp. at 18:5–9.

Here, the Court finds that Exhibits 11 and 26 are based on Vargas's personal knowledge and not hearsay. First, contrary to Defendants' assertion, Vargas can "lay a foundation for records composed by third parties" because he has personal knowledge of his own medical records and the medical assessments described within. Defs.' Mot. at 16:27–28; *see* Fed. R. Evid. 602; *Edwards*, 2016 WL 1588398, at *3 ("Plaintiff may testify about his medical records with the foundation that they are his medical records, and the records themselves concern information given through medical assessment."). Second, Vargas intends to introduce the evidence "for several purposes, including to demonstrate Defendant Whitman's retaliatory motive and intent." Pl.'s Opp. at 8:18–19. Articles offered to show their effect on the reader are not hearsay. *Holmes*, 2021 WL 2044470, at *26; *see also* Pl.'s Opp. at 8:3–8 (citing ECF No. 53-9) ("Defendant Whitman repeatedly testifies that he reviewed [Vargas's] medical records in finding the RVR was substantiated."). Thus, because Vargas does not offer his medical records for the truth of the matter asserted—"namely, that [Vargas] in fact has certain diagnosed medical conditions resulting from the attack"—they are not hearsay. Pl.'s Opp. at 7:18–8:25; *see* Fed. R. Evid. 801.

The Court finds that Exhibit 21 is relevant. "Exhibit 21 describes the requirements governing Vargas's COVID-19 quarantine." Defs.' Mot. at 17:16–17; *see* Gallagher Decl., Ex. B-21. Defendants argue that "Vargas being quarantined for COVID-19 purposes is irrelevant to his claims against Officer Lopez-Ortega and Lieutenant Whitman." Defs.' Mot. at 17:17–18. In his Opposition, Vargas does not respond to this argument nor show how Exhibit 21 is relevant to his claims. *See generally* Pl.'s Opp. at 3:1–8:25, 18:5–9. But at the Pretrial Conference, Vargas's counsel offered the following theory on relevance: Exhibit 21 demonstrates that a culture of attempting to silence prisoners who speak out exists at the CTF because Vargas was placed in isolated housing after the riot that occurred on May 25, 2021, presumably to prevent Vargas from speaking up. The Court has further reviewed Exhibit 21. Exhibit 21 states that Vargas was placed on a fourteen-day "medical quarantine" upon his release from the hospital on May 25, 2021, where Vargas "must be housed separately from the general population and those on medical isolation." Gallagher Decl., Ex. B-21. Because the evidence tends to show that under the Covid-

19 policy, isolation was an automatic consequence of Vargas's injury upon return from the hospital—and not a discretionary decision—the evidence does not support Vargas's theory that Defendants attempted to silence Vargas by placing him in quarantine. However, because the policy that medical quarantine is an automatic consequence of an injury requiring hospitalization makes it more probable that Lopez-Ortega knew that Vargas would be placed in isolation as a result of Vargas's injury in the riot, it is relevant. Fed. R. Evid. 401.

Accordingly, the Court **DENIES** Defendants' request to exclude Exhibits 11, 21, and 26.

### f.    Exhibit 12:  September 20, 2019, Facility "C" Interview Questionnaire (DEFS 81–82)

Exhibit 12 contains two documents titled, "Interview Questions," structured for use by prison staff with prisoners. Gallagher Decl., Ex. B-12 (Pl.'s Trial Ex. No. 12) (ECF No. 77-11). Defendants argue that the Court "should exclude Exhibit 12 as inadmissible hearsay, irrelevant, and under Rule 403." Defs.' Mot. at 17:21–24. Defendants further argue that Rule 404(b) "prohibits this evidence" and that "Defendants are not aware as to whether any identified witness has personal knowledge of the exhibits to establish their relevance[.]"[8] *Id.* at 18:1–3, 19:4–5.

Vargas contends that (1) the evidence is not being offered for its truth; (2) it is relevant to whether "Lopez-Ortega knew or should have known that releasing certain inmates into the Yard would pose a risk to their safety"; and (3) it is more probative than prejudicial. Pl.'s Opp. at 18:10–19:15.

Here, the Court finds that Exhibit 12 is relevant, is not hearsay, and is admissible under Rule 403. First, Vargas intends to introduce the evidence "to show that prison guards, including Lopez-Ortega, knew or should have known that releasing certain inmates into the Yard would pose a risk to their safety." *Id.* at 18:22–24. Articles offered to show their effect on the reader are not hearsay. *Holmes*, 2021 WL 2044470, at *26. Thus, because Vargas does not intend to introduce the evidence for the truth of the matter asserted—that "prison officials received notice

---

[8] Defendants again make a passing reference to Rule 404(b). Defs.' Mot. at 18:1–3. However, Defendants do not elaborate on the Rule's application for this evidence. Thus, the Court does not opine on whether Rule 404(b) bars Vargas from introducing this evidence.

United States District Court
Northern District of California

that white prisoners were going to attack staff" and that "prison officials organized incremental

releases with 'Bulldogs'"—it is not hearsay.  Defs.' Mot. at 17:26–18:10; Pl.'s Opp. at 18:18–22;

*see* Fed. R. Evid. 801.  Second, Defendants' argument that the evidence is unfairly prejudicial

because "a juror may base their decision as to the liability of [Defendants] on a non-party's

conduct and knowledge" is unpersuasive because Vargas plans to introduce the documents to

show their effect on Defendants, not on third parties.  Defs.' Mot. at 18:24–26; Pl.'s Opp. at

19:10–15; *see* Fed. R. Evid. 403.

However, the Court agrees with Defendants that Vargas can only introduce Exhibit 12

through a witness with personal knowledge of the document.  Defs.' Mot. at 19:4–5; *see* Fed. R.

Evid. 602.  Vargas does not address Defendants' argument that the evidence should be excluded

for lack of foundation.  *See generally* Pl.'s Opp. at 18:10–19:15.  Therefore, to introduce Exhibit

12, Vargas must identify a witness who can lay a foundation for the document.

Accordingly, the Court **GRANTS** Defendants' request to exclude Exhibit 12 with the

caveat that Vargas may introduce the evidence if he complies with Rule 602 by identifying a

witness who has personal knowledge of the document.[9]

### g.    Exhibit 14:  August 20, 2019, Incident Report

"Exhibit 14 is a report detailing that Officer Blake Barron (an intended witness at trial) was

stationed at the CTF on August 14, 2020 to record Yard release with a Canon Digital Camera

'relating to a riot that occurred on October 16, 2018.'"  Pl.'s Opp. at 19:24–27 (citing Gallagher

Decl. ¶ 6, Ex. B-14 (Pl.'s Trial Ex. No. 14) (ECF No. 77-13)).  Defendants argue that the Court

"should exclude Exhibit 14 containing three pages from a report relating to an unrelated August

2019 riot, because Rules 403, 404(b), and 802 prohibit this evidence," it is irrelevant, and that the

Court "should exclude evidence referencing what occurred around other prison riots."  Defs.' Mot.

at 19:7–11, 20:11.  Defendants further argue that "Vargas has not identified evidence to show the

parties were involved in or have personal knowledge about what occurred around the prior riots."

---

[9] At the Pretrial Conference, Vargas's counsel indicated that Vargas can lay a foundation for
Exhibit 12 because Vargas was interviewed in Facility C with the questionnaire in Exhibit 12.  As
discussed at the conference, if Vargas provides this testimony at trial, it will overcome
Defendants' objection under Rule 602.

United States District Court
Northern District of California

*Id.* at 19:26–27.

Vargas contends that (1) the evidence "cannot be 'improper character evidence' because it is not character evidence at all"; (2) it will not confuse the jury; and (3) it "is relevant for two reasons: first, because it may be used to impeach Barron or other witnesses in the instance that they testify that these types of violent incidents were never recorded by video, and second, because it speaks to whether CTF guards, including Lopez-Ortega, was aware of the likelihood of such an occurrence." Pl.'s Opp. at 19:16–20:21.

Under the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2).

Here, the Court finds that the evidence is relevant, is not inadmissible character evidence, and is admissible under Rule 403. First, Defendants do not explain how the evidence constitutes character evidence by proving a *character trait* of a Defendant. *See* Defs.' Mot. at 19:21–24; Fed. R. Evid. 404(b)(1). It is axiomatic that evidence cannot be improper character evidence unless it speaks to one's character. Pl.'s Opp. at 19:20–28. Second, because evidence that CTF officers recorded violent incidents by video makes it more probable that "Lopez-Ortega was aware of the likelihood of such an occurrence," it is relevant. *Id.* at 20:6–9; Fed. R. Evid. 401. Finally, Defendants' argument that the evidence is unfairly prejudicial and confusing because it is "irrelevant" and a juror "might assume Defendants were bound by the conduct of non-party officials" is unpersuasive because the evidence is relevant, and Vargas plans to introduce the documents to show the knowledge of Defendants, not that of third parties. Defs.' Mot. at 20:1–10; *see* Fed. R. Evid. 403. And Defendants do not explain why a limiting instruction will not assuage their concern. *See* Fed. R. Evid. 105.

Moreover, the evidence is not inadmissible under Rule 602 because Officer Barron is an intended witness at trial who has personal knowledge of the document and can lay a foundation for the evidence. Pl.'s Opp. at 20:10–12; *see* ECF No. 72, at 1 (Pl.'s Witness List); Fed. R. Evid. 602.

United States District Court
Northern District of California

United States District Court
Northern District of California

However, Vargas does not respond to Defendants' argument that the evidence is hearsay. Defs.' Mot. at 20:11; *see generally* Pl.'s Opp. at 19:16–20:12.  Vargas must articulate why the evidence is not hearsay or provide an applicable hearsay exception to introduce the evidence.

Accordingly, the Court **GRANTS** Defendants' request to exclude Exhibit 14 with the caveat that Vargas may introduce the evidence if he shows that it is not inadmissible hearsay.

### h.    Exhibit 23:  Inmate Pay Sheet (DEFS 888)

Defendants argue that the Court "should exclude from evidence the Inmate Pay Sheet (DEFS 888) and any testimony relating to Vargas's income, on relevance grounds."  Defs.' Mot. at 20:21–23.  Vargas contends that the exhibit is relevant because it shows that he "was working in his capacity as a porter when Lopez-Ortega initiated yard release on May 25, 2021."  Pl.'s Opp. at 20:13–21.

Here, Defendants request to exclude Exhibit 23 because Vargas's income is irrelevant to his claims or to the issue of damages.  Defs.' Mot. at 20:24–21:4.  Defendants do not argue that information relating to Vargas's job position as a porter at CTF is irrelevant.  And Vargas does not seek to introduce evidence of his income but only evidence showing that he was working as a porter on May 25, 2021.  Pl.'s Opp. at 20:13–21 (citing Gallagher Decl. ¶ 6, Ex. B-23 (Pl.'s Trial Ex. No. 23) (ECF No. 77-16)).

Accordingly, the Court **GRANTS** Defendants' request to exclude Vargas's income information from Exhibit 23.  Vargas may introduce Exhibit 23 with Vargas's income information redacted.[10]

### 8.    Motion *In Limine* No. 8

Defendants argue that the Court should "permit the impeachment of Vargas and other incarcerated witnesses under Federal Rule of Evidence 609 with limited evidence, including the fact that the witnesses are currently incarcerated, the date, fact that they were convicted of a

---

[10] As discussed at the Pretrial Conference, Vargas is permitted to provide relevant testimony at trial concerning any payments he was required to make as a consequence of Defendants' actions and what the payments meant to him in light of his income at the CTF.  If Vargas provides this testimony, then he can introduce Exhibit 23 without redacting his income information.

felony, number of qualifying felony convictions, and length remaining on the sentence" because "witness credibility is central to this case."[11]  Defs.' Mot. at 21:5–23:12.  Vargas contends that the prior convictions of Vargas and other witnesses should be excluded, except "to the limited extent that [Vargas] opens the door to questioning on his 2003 conviction."  Pl.'s Opp. at 23:8–10.

The Federal Rules of Evidence specify the following:  for "attacking a witness's character for truthfulness by evidence of a criminal conviction:

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
>> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant[.]

Fed. R. Evid. 609(a).  Evidence of criminal convictions more than 10 years old is only admissible if

> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

*Id.* at 609(b); Fed. R. Evid. 609, Note to Subdivision (b) (noting intention "that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances"); *see also United States v. Bay*, 762 F.2d 1314, 1317 (9th Cir. 1984) ("Evidence of a conviction more than ten years old is presumptively inadmissible as too remote.").

Here, the Court finds the prejudicial effect of introducing evidence of Vargas's 2003 and 2016 prior convictions substantially outweighs its probative value.  Evidence of Vargas's prior convictions is not admissible because the prior convictions are not relevant to the present civil action, which is a 42 U.S.C. § 1983 action involving allegations that Defendants violated Vargas's Constitutional rights.  *See Jones v. Mora*, No. 20-cv-04093-TSH, 2022 WL 17365253, at *4 (N.D. Cal. Dec. 1, 2022)  (excluding evidence of plaintiff's criminal convictions in civil action alleging

---

[11] In 2003, Vargas was convicted of attempted robbery, assault with a firearm, making a criminal threat, and false imprisonment; he was convicted in 2016 for possession of drugs while incarcerated.  Defs.' Mot. at 21:20–22:2; Pl.'s Opp. at 21:24, 22:13.  Vargas plans to call two witnesses who have prior convictions, Berlan Dicey and David Falcon.  Defs.' Mot. at 22:3–5.  Dicey was convicted in 1998 of first degree murder, and Falcon was convicted in 2005 of first degree murder and assault with a firearm.  *Id.* at 22:3–13; Pl.'s Opp. at 22:22–24.

United States District Court
Northern District of California

violations of 42 U.S.C. § 1983); *see also Ellis v. Navarro*, No. C-07–5126-SBA(PR), 2012 WL 3580284, at *2 (N.D. Cal. Aug. 17, 2012) ("Defendants contend that Plaintiff's 1995 conviction for attempted murder of a police officer should be admitted, notwithstanding Rule 403 . . . given the serious nature of Plaintiff's offense, advising the jury of his prior conviction for a violent felony would be unduly prejudicial under Rule 403."); *cf. United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) ("Generally, crimes of violence, theft crimes, and crimes of stealth do not involve 'dishonesty or false statement' . . . [unless] the crime was actually committed by fraudulent or deceitful means.") (alteration added).

Moreover, the Court finds the prejudicial effect of introducing evidence of other witnesses' prior convictions substantially outweighs its probative value. Defendants hang their hats on the fact that Vargas's witnesses, Dicey and Falcon, were both convicted of first degree murder. Defs.' Mot. at 22:3–13. "Although such crimes may indicate a lack of respect for the persons or property of others, they do not bear directly on the likelihood that the [witness] will testify truthfully." *Glenn*, 667 F.2d at 1273 (alteration added) (cleaned up).

Accordingly, the Court **DENIES** Defendants' Motion *in Limine* No. 8. Defendants shall not introduce evidence of Vargas's prior convictions or of other witnesses' prior convictions for purposes of impeaching their credibility. Defendants may question Vargas on his 2003 conviction to the extent that Vargas opens the door to this conviction.

### 9.    Motion *In Limine* No. 9

Defendants argue that the Court "should order Vargas's legs to be restrained out of view of the jury throughout trial." Defs.' Mot. at 23:13–24:17. Vargas contends that he should not be shackled under any circumstances. Pl.'s Opp. at 23:11–13.

"[J]udges must seek to maintain a judicial process that is a dignified process." *Deck v. Missouri*, 544 U.S. 622, 631 (2005). When evaluating whether to visibly shackle an in-custody plaintiff during a civil trial, the Court must perform an "individualized security determination" that "takes account of the circumstances of the particular case." *Claiborne v. Blauser*, 934 F.3d 885, 896, 900 (9th Cir. 2019) (cleaned up). Shackling is permitted where "a compelling need for security" exists and where "the court considers any less restrictive alternatives." *Id.* at 901.

1   "Compelling circumstances may include prisoner status, propensity for violence, and history of

2   unruly conduct." *Seals*, 2011 WL 1399245, at *7 (citing *Wilson v. McCarthy*, 770 F.2d 1482,

3   1485 (9th Cir. 1985)); *see also Wilson*, 770 F.2d at 1485 ("[S]hackling is proper where there is a

4   serious threat of escape or danger to those in and around the courtroom or where disruption in the

5   courtroom is likely in the absence of shackles.") (cleaned up).  Further, while *Claiborne* only

6   addressed visible shackling, courts in this district apply its guideposts when evaluating whether

7   concealed shackling is appropriate.  *E.g., Jones v. Perez-Pantoja*, No. 22-cv-00773-TSH, 2024

8   WL 3748328, at *3 (N.D. Cal. Aug. 8, 2024).

9        Here, unlike several of the cases cited to by Defendants, Vargas opposes any type of

10  shackling.  *See* Defs.' Mot. at 23:20–26; Pl.'s Opp. at 25:2–11.  Defendants argue that the

11  following circumstances justify restraining Vargas's legs out of view during trial:

12       Vargas is a prisoner serving a 32-year prison sentence for a violent
         crime where he attempted robbery, committed burglary, and falsely
13       imprisoned another person, by threats of violence and with the use of
         a firearm.  Within the past decade, while already incarcerated, Vargas
14       exhibited a disregard for rules and decorum when he criminally
         possessed illegal drugs.  Additionally, Vargas's past conduct while
15       incarcerated supports the conclusion that Vargas will continue to
         disregard rules and likely engage in violent behavior absent restraint.
16       During his incarceration, Vargas has been found guilty of serious
         rules violations, including participating in a riot on two occasions and
17       possessing a cell phone stored in created hidden compartments on
         three occasions.  Additionally, according to the exhibits Vargas seeks
18       to use at trial, he is a documented affiliate of the Mexican Mafia
         prison gang.

19

20  Defs.' Mot. at 24:4–15 (internal citations omitted).  Vargas counters that Defendants

21  "misrepresent[] the circumstances of [Vargas's] incarceration, behavioral tendencies, and regard

22  for the rules and decorum."  Pl.'s Opp. at 25:22–23:3.  Vargas contends that the following

23  circumstances compel the conclusion that shackling is not warranted:

24       [Vargas] has never escaped nor attempted to escape.  By Defendants'
         admission, the so-called 'serious rules violations' [Vargas] has been
25       'found guilty' of are limited to 1) allegedly participating in a riot and
         2) possession of a cellphone.  In neither instance did Vargas exhibit
26       any violent tendencies.  Indeed, that at least five correctional officers
         (COs Glaze, Haynes, Ibarra, Garcia, and Solis) reported witnessing
27       Bulldog-affiliated inmates charge Vargas (not the other way around)
         undermines Defendants' contention that Vargas is violent, and need
28       be shackled.  Likewise, possession of a cell phone has nothing to do

United States District Court
Northern District of California

with one's propensity for violence and certainly does not post any
'serious threat of escape.'

*Id.* at 24:3–17 (internal citations omitted).

The Court finds that the circumstances of this case do not demonstrate a compelling need for concealed shackling. First, Vargas does not demonstrate a propensity for violence that rises to the level of warranting shackling. The parties agree that (1) in 2003, Vargas was convicted of attempted robbery, assault with a firearm, making a criminal threat, and false imprisonment; and (2) Vargas was convicted in 2016 for possession of drugs while incarcerated. Defs.' Mot. at 21:20–22:2; Pl.'s Opp. at 21:24, 22:13. To be sure, Vargas has a history of felony convictions for violent offences; however, this alone does not demonstrate a compelling need for shackling. *See Claiborne*, 934 F.3d at 898 ("His status as a convicted felon is not sufficient. . . . [T]here is nothing in the record to indicate that Claiborne disrupted court proceedings, acted disrespectfully in court, or attempted to escape. Thus, the district court erred by concluding that it would have kept Claiborne shackled on the basis that he is a convicted felon serving a lengthy prison sentence.") (internal citations omitted). Vargas's history differs from cases allowing concealed shackling where in-custody plaintiffs were convicted of murder or attempted murder. *See, e.g., McCurdy v. Kernan*, No. 17-cv-01356-SAB(PC), 2022 WL 198546, at *2 (E.D. Cal. Jan. 21, 2022); *Jones*, 2024 WL 3748328, at *3; *Crago v. Pitz*, No. CV-19-04532-PHX-ROS, 2022 WL 4094150, at *2 (D. Ariz. Sept. 7, 2022). And aside from his alleged participation in a riot—a riot which Vargas disputes and serves as the impetus for his case—Defendants do not point to any history of violence from Vargas while incarcerated. *See* Pl.'s Mot. at 2:16–17 ("Vargas has been incarcerated since 2003. Before the RVR was issued in connection with the May 25, 2021 attack, [Vargas] had never been written up for a violent infraction."); Pl.'s Opp. at 1:11–13 (same); *contra McCurdy*, 2022 WL 198546, at *2 (detailing plaintiff's "lengthy disciplinary history dating back several years" which included sixteen violent incidents over the preceding fifteen years); *Crago*, 2022 WL 4094150, at *2 (noting plaintiff "has an extensive history of violence in prison, including attacks on corrections officers").

Second, Vargas's sentence is not analogous to those of plaintiffs in cases where shackling was permitted. Vargas is serving a 32-year sentence. Defs.' Mot. at 24:4–15. In contrast,

1    shacking was permitted in cases where plaintiffs were serving much lengthier sentences.  *Contra*

2    *Karban v. Baltierra*, No. CV-19-04377-PHX-DWL, 2022 WL 17976321, at *2 (D. Ariz. Dec. 28,

3    2022) ("Plaintiff is serving a 138.5-year sentence for an array of serious sexual crimes.");

4    *McCurdy*, 2022 WL 198546, at *2 (noting "Plaintiff is currently serving five different sentences").

5    Third, Defendants have not pointed to any history of unruly conduct by Vargas—in a courtroom

6    or otherwise.  *Contra Karban*, 2022 WL 17976321, at *2 (noting "[Plaintiff] is a convicted sex

7    offender with a long history of violating the prison's visitation and contact rules") (alteration in

8    original); *McCurdy*, 2022 WL 198546, at *2 ("Plaintiff has a history of starting fires, spitting on

9    officers, and damaging/destroying state property.").  In fact, although Vargas's 32-year sentence

10   stems from a conviction in 2003, he is currently scheduled for release in 2028.  Defs.' Mot. at

11   24:4–15; Defs.' Opp. at 1:28.  This is because Vargas has had "his sentence repeatedly reduced for

12   completing semesters of college studies."  Pl.'s Opp. at 22:6–9 (citing Gallagher Decl. ¶ 4).

13   Overall, Defendants do not offer evidence disputing Vargas's assertion that prior to the RVR,

14   "[h]e was the model inmate, working a job as a porter and attending classes so that he could

15   achieve a college degree."  *Id.* at 1:11–14.  Finally, there is no evidence that Vargas poses a

16   serious risk of escape as Defendants have not identified any instance where Vargas planned,

17   attempted, or threatened to escape.  *Id.* at 24:3–17.

18        Accordingly, the Court **DENIES** Defendants' Motion *in Limine* No. 9.[12]

19        **10.    Motion *In Limine* No. 10**

20        Defendants argue that the Court "should bifurcate the liability and punitive-damages

21   phases of the trial in this action."  Defs.' Mot. at 24:18–25:27.  Vargas does not oppose the motion

22   but requests that the "Court require Defendants to produce documents sufficient to show their

23   financial worth" to the Court at the start of trial.  Pl.'s Opp. at 26:4–16.

24        The Court has broad discretion in deciding whether to bifurcate a trial.  *Zivkovic v. S. Cal.*

25   *Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  "For convenience, to avoid prejudice, or to

26

27   ───────────────
     [12] As discussed at the Pretrial Conference, CDCR officers will be present in the courtroom during

28   trial to provide security.

                                        30

expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b).  The Court recognizes that courts "trying section 1983 cases in this circuit often bifurcate the punitive damages issue." *Monroe v. Griffin*, No. 14-cv-00795-WHO, 2015 WL 5258115, at *5 (N.D. Cal. Sept. 9, 2015); *see generally Henderson v. Prado*, No. C-05-0234 VRW, 2007 WL 1229330 (N.D. Cal. Apr. 24, 2007); *Baker v. Yassine*, No. 2:11-cv-00246-AC, 2016 WL 4264149 (E.D. Cal. Aug. 15, 2016).

Here, the Court finds that "[e]vidence of Defendants' financial condition in the initial part of the trial is not relevant and would be more prejudicial than probative under Rule 403." *Edwards*, 2016 WL 1588398, at *4.  Moreover, bifurcation "does not raise serious efficiency concerns, as the same jury that decides liability and entitlement to punitive damages may also decide the amount of punitive damages."  *Monroe*, 2015 WL 5258115, at *6.

Accordingly, the Court **GRANTS** Defendants' Motion *in Limine* No. 10.  If the jury returns a verdict for Plaintiff and finds that he is entitled to punitive damages, then the same jury will consider the amount of punitive damages to award.[13]

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Vargas's Motion *In Limine* and **GRANTS IN PART and DENIES IN PART** Defendants' *Motions In Limine*.

**IT IS SO ORDERED.**

Dated: October 16, 2025

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

---

[13] In the Court's Tentative Order on Motions *in Limine*, the Court ordered Defendants to have documents available at trial showing their financial worth for use in the punitive damages phase if necessary.  ECF No. 90.  However, at the Pretrial Conference, Vargas's counsel indicated that Vargas did not request documents related to Defendants' financial worth during discovery. Therefore, the Court **DENIES** Vargas's request that Defendants be ordered to produce documents showing their financial worth.