UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO VARGAS,<br><br>    Plaintiff,<br><br>v.<br><br>L. LOPEZ, et al.,<br><br>    Defendants. | Case No. 23-cv-02490-TSH<br><br>**ORDER RE: MOTION TO STRIKE COSTS**<br><br>Re: Dkt. No. 180 |

## I. INTRODUCTION

Plaintiff Ernesto Vargas, who is incarcerated at a California state prison, filed this case against Defendants Correctional Officer L. Lopez-Ortega and Correctional Lieutenant C. Whitman (collectively, "Defendants"), alleging civil rights violations under the First and Eighth Amendments. ECF No. 1. Following a jury trial, the Court entered judgment on October 29, 2025, against Vargas and in favor of Defendants. ECF No. 160. On November 12, 2025, Defendants submitted a bill of costs amounting to $12,910.53. ECF No. 179. Pending before the Court is Vargas's Motion to Strike Costs. ECF No. 180 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the January 22, 2026, hearing. For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "costs—other than attorneys' fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Unless otherwise authorized by statute or contract, federal law limits the costs that a court may award under Rule 54(d) to the following:

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 12.

>(1) Fees of the clerk and marshal;
>
>(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
>(3) Fees and disbursements for printing and witnesses;
>
>(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
>(5) Docket fees under section 1923 of this title; [and]
>
>(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "With regard to individual itemized costs, 'the burden is on the party seeking costs . . . to establish the amount of compensable costs and expenses to which it is entitled.'" *City of Alameda v. Nuveen Mun. High Income Opportunity Fund*, No. C08-4575-SI, 2012 WL 177566, at *1 (N.D. Cal. Jan. 23, 2012) (quoting *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248–49 (10th Cir. 2002)).

"By its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc) ("*AMAE*"). The Ninth Circuit describes the presumption in favor of awarding costs to the prevailing party as a "strong presumption" with a burden on the non-prevailing party to show why taxable costs are not recoverable. *Miles v. State of California*, 320 F.3d 986, 988–89 (9th Cir. 2003); *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999) ("Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded."). Thus, a district court need not give reasons for abiding by the presumption and awarding taxable costs to the prevailing party. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003) ("*SOV*") ("The presumption itself provides all the reason a court needs for awarding costs[.]"). On the other hand, a district court must "specify reasons" for refusing to award taxable costs to the prevailing party. *Id*. The court must "explain why . . . it would be inappropriate or inequitable to award costs." *AMAE*, 231 F.3d at 593.

2

### III. DISCUSSION

Defendants seek an award of costs amounting to $12,910.53. ECF No. 179. Vargas filed a Motion to Strike Costs on November 26, 2025. ECF No. 180. Vargas does not dispute that Defendants are the prevailing parties. Mot. at 1. Nor does Vargas challenge the imposition of specific costs. *See generally id.* Instead, he requests that the Court exercise its discretion to deny Defendants costs altogether. *Id.* at 2–3. On December 10, 2025, Defendants filed an Opposition. ECF No. 182 ("Opp.").[2] On December 29, 2025, Vargas filed a Reply. ECF No. 185 ("Reply").

In sum, the Court concludes that because "several factors weigh heavily against a large cost award in this case, and severe injustice would result from such an award," good reasons exist for declining to award Defendants costs. *Draper v. Rosario*, 836 F.3d 1072, 1089 (9th Cir. 2016).

**A.   Procedural Issues**

As a threshold matter, Defendants argue that "Vargas waived the opportunity to challenge Defendants' bill of costs, because Vargas failed to comply [*sic*] the Civil Local Rules" by failing "to meet and confer prior to moving the strike Defendants' bill of costs." Opp. at 2:8–4:2. Vargas responds that procedural error does not bar the Court from considering his objections on the merits. Reply at 10:13–12:15.

Under the Local Rules, any objections to a bill of costs

> must contain a representation that counsel met and conferred in an effort to resolve disagreement about the taxable costs claimed in the bill, or that the objecting party made a good faith effort to arrange such a conference.

Civ. L.R. 54-2(b).

Here, the parties agree that Vargas's Motion functions as an objection to Defendants' Bill of Costs and is thus subject to the meet and confer requirement under Local Rule 54-2. *See* Opp. at 2:20–21; Reply at 10:20–22. Yet Vargas's Motion is devoid of any representation that his counsel met and conferred with Defendants' counsel regarding the Bill of Costs. *See generally*

---

[2] As an initial matter, Defendants object to two paragraphs in the Declaration of Zoe E. Gallagher (ECF No. 180-1). Opp. at 5 n.1. Because the Court does not rely on the Gallagher Declaration in ruling on Vargas's Motion, the Court need not reach Defendants' objections.

1   Mot.  In his Reply, Vargas explains that he failed to comply with the meet and confer requirement

2   due to his "counsel's oversight."  Reply at 10:15–17, n.6 (citing Declaration of Michael T. Gluk ¶

3   3 ("Gluk Decl.") (ECF No. 185-1)).  Once counsel learned of this oversight, they "requested to

4   meet and confer on the issue of costs"; however, Vargas "declined to stipulate to a reduced cost

5   award, citing his indigency and his lack of employment."  *Id.* (citing Gluk Decl. ¶¶ 4–6).

6          The Court finds that Vargas did not comply with the meet and confer requirement under

7   Local Rule 54-2.  Nonetheless, the Court exercises its discretion to excuse Vargas's counsel's

8   failure to comply with the meet and confer requirement.  *Cf. Campbell v. Nat'l Passenger R.R.*

9   *Corp.*, No. C05-5434-CW, 2010 WL 582754, at *1 (N.D. Cal. Feb. 18, 2010) ("Having reviewed

10  the parties' papers, the Court excuses Plaintiff's counsel's failure to abide by this requirement.");

11  *Carlson v. Century Sur. Co.*, No. C11-00356-SI, 2012 WL 2602732, at *2 (N.D. Cal. July 5, 2012)

12  ("Plaintiffs' objections did not contain such a representation . . . . Nonetheless, the Court will

13  consider plaintiffs' objections here."); *see also Yue v. Storage Tech. Corp.*, No. C07-05850-JW,

14  2008 WL 4185835, at *7 (N.D. Cal. Sept. 5, 2008) ("District courts within the Ninth Circuit have

15  granted attorney's fees to plaintiffs despite a plaintiff's failure to comply with Local Rule 54-6

16  meet and confer requirement.").  Defendants do not dispute that Vargas timely filed his objection

17  to their Bill of Costs.  *See generally* Opp.; Reply at 11:14–25; *contra Konig v. Dal Cerro*, No.

18  C04-02210-WHA, 2008 WL 4628038, at *1 (N.D. Cal. Oct. 16, 2008) (finding plaintiff waived

19  right to challenge costs by failing to timely object to bill of costs).  And Vargas's counsel met with

20  Defendants' counsel upon realizing their procedural error.  *Cf. Hernandez v. Caliber Bodyworks*

21  *LLC*, No. 21-cv-05836-EMC, 2022 WL 2132914, at *4 (N.D. Cal. June 14, 2022) ("[T]he Court

22  declines to deny Defendants' motion on procedural grounds in light of Defendants' counsel's

23  remedial steps of meeting and conferring with Plaintiff's counsel after filing the motion.  These

24  actions are sufficient to cure Defendants' error in the first instance.").  Further, in analogous cases,

25  courts in this district have excused procedural violations where futility renders the procedure

26  unnecessary.  *See, e.g., Vuong v. Lopez-Flores*, No. 24-cv-03510-AMO, 2025 WL 3110436, at *1

27  (N.D. Cal. Nov. 6, 2025).  Such is the case here where Defendants demand over $12,000 in costs

28  and Vargas cannot afford to pay any costs.  *See* Reply at 2:8–9 ("These facts show that Vargas is

4

1 unable to pay even a reduced bill of costs[.]").

2 Accordingly, the Court will consider the merits of Vargas's Motion.

**B.   Discretionary Factors**

A court may deny costs based on (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014).  Each of these factors is an "appropriate reason for denying costs," or "for a reduction in the amount awarded to the prevailing party." *Draper*, 836 F.3d at 1089 (cleaned up).  In addition, the amount of costs is relevant in determining whether to deny costs.  *Id.*  However, "[t]his is not an exhaustive list of 'good reasons' for declining to award costs, but rather a starting point for analysis." *Escriba*, 743 F.3d at 1247–48 (quoting *AMAE*, 231 F.3d at 593) (cleaned up).

Here, Vargas argues that the Court should deny Defendants' request for costs because (1) he is indigent; (2) this civil rights lawsuit raises an issue of substantial public importance; (3) an award of costs will chill future similar actions for constitutional claims; and (4) whereas Vargas is indigent, Defendants have abundant means.  Mot. at 2–3.  Vargas further argues that the Court should not award Defendants costs because Vargas's claims were brought in good faith, were not frivolous, and the case was close.  *Id.* at 4.  Defendants contend that Vargas fails to overcome the presumption in favor of awarding costs because no factor weighs in his favor.  Opp. at 4:3–6.

The Court addresses each potential reason for denying costs below.  The Court concludes that each of the discretionary factors enumerated by the Ninth Circuit counsels against imposing a cost award in Vargas's case.  *Cf. Draper*, 836 F.3d at 1088.  Accordingly, the Court exercises its discretion to excuse Vargas's obligation to pay Defendants' request for costs.

**1.   Vargas's Financial Resources**

Vargas argues that the "Court should not tax costs against Vargas because he is indigent and cannot afford to pay." Mot. at 5:13–6:16.  Defendants contend that "Vargas's indigence is not a justification to evade the presumption of awarding costs." Opp. at 9:20–10:27.

"District courts should consider the financial resources of the plaintiff and the amount

1    of costs in civil rights cases." *Stanley*, 178 F.3d at 1079. "Indigency is a factor that the district

2    court may properly consider in deciding whether to award costs." *Id.* "Whether the financial

3    resources in question are of a level sufficient enough to deny an award of costs can be inferred

4    from the economic circumstances of the plaintiff." *Garcia v. Cnty. of Napa*, No. 21-cv-03519-

5    HSG, 2023 WL 3134192, at *1 (N.D. Cal. Apr. 26, 2023) (cleaned up).

6         Here, the Court finds that Vargas has limited financial resources relative to the $12,910.53

7    in requested costs. Vargas is indigent, currently unemployed while in prison, and does not have

8    any other income or financial support. Mot. at 5–6; *see* Declaration of Ernesto Vargas ¶¶ 11, 14–

9    15 ("Vargas Decl.") (ECF No. 181); *see also* Prisoner's Application to Proceed *In Forma*

10   *Pauperis* (ECF No. 2) (indicating Vargas has no income, no assets, and limited funds in his prison

11   trust account). Vargas initiated his action *in forma pauperis* and was appointed *pro bono* counsel

12   to represent him during litigation and at trial. Mot. at 5 (citing Vargas Decl. ¶¶ 4–5). And the

13   Court has already deemed him eligible for a partial filing fee pursuant to 28 U.S.C. § 1915(b)(1).

14   ECF No. 7. Collectively, Vargas's economic circumstances establish that this factor weighs in

15   favor of disallowing costs. *Cf. M. M. v. Cty. of San Mateo*, No. 4:18-cv-05396-YGR, 2020 WL

16   3251175, at *2 (N.D. Cal. June 16, 2020) ("[I]f defendants were permitted to seek recovery of

17   $9,483.65 in costs against plaintiff, she would suffer tremendous financial hardship, and such

18   award of costs would likely render her indigent."); *Baltimore v. Haggins*, No. 1:10-cv-00931-LJO,

19   2014 WL 804463, at *1–2 (E.D. Cal. Feb. 27, 2014) (declining to award costs of $1,462.61 where

20   incarcerated plaintiff proceeded *in forma pauperis* and was represented by *pro bono* counsel).

21        Moreover, the Court finds that severe injustice would result if Vargas were required to pay

22   thousands of dollars of costs incurred by Defendants, correctional officers who Vargas alleged

23   failed to protect him and chilled his speech and who now assert that "Vargas 'chose' to lose his

24   job by exercising his right to appear at his own jury trial[.]" *See* Reply at 3:3–20; *SOV*, 335 F.3d

25   at 945 ("[I]n the rare occasion where severe injustice will result from an award of costs (such as

26   the injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of

27   dollars of her alleged oppressor's legal costs), a district court abuses its discretion by failing to

28   conclude that the presumption has been rebutted."); *cf. Draper*, 836 F.3d at 1089 (finding severe

United States District Court
Northern District of California

injustice would result from a $3,018.35 award against the plaintiff, an indigent incarcerated person who brought an excessive force claim against a correctional officer).

Defendants' arguments that this factor weighs in their favor are unpersuasive. First, contrary to Defendants' assertion, the Ninth Circuit has instructed that courts should not award costs where doing so would render the plaintiff indigent. *See* Opp. at 9:20–10:4; Reply at 1:19–2:2; *Escriba*, 743 F.3d at 1248 ("Costs are properly denied when a plaintiff would be rendered indigent should she be forced to pay the amount assessed.") (cleaned up). Vargas is still making payments on the $400 filing fee he incurred filing his complaint on May 22, 2023. Mot. at 6:5–6; Vargas Decl. ¶¶ 2–3. *A fortiori*, ordering Vargas to pay costs of nearly $13,000—thirty times higher than the $400 filing fee he has not paid off in over two years—would surely render him indigent. *Cf. Washburn v. Fagan*, No. C03-00869-MJJ, 2008 WL 361048, at *2 (N.D. Cal. Feb. 11, 2008) (finding that plaintiff's status as an incarcerated person with "limited means" weighed against ordering her to pay $16,000 in costs). Defendants argue that Vargas can "incrementally pay costs," by making "monthly payments of 20 percent of the preceding month's income credited to [his] account." Opp. at 9:22–24 (citing 28 U.S.C. § 1915(b)(2)). But that does not assuage the concerns over Vargas's indigency—even assuming, *arguendo*, that Vargas could again earn $0.55 per hour, it would take Vargas over 23,000 hours of work to pay Defendants' costs. *See* Mot. at 6 n.5; Reply at 2:14–22, n.1. That is simply untenable. *See Uribe v. Babienco*, No. C13-01106-WHA, 2016 WL 5930269, at *2 (N.D. Cal. Oct. 12, 2016) ( "But if the total amount of costs is unjust, then spreading it out with a payment plan does little to mitigate its injustice—especially if, as plaintiff observes, it would take a prisoner approximately 25 years of full-time work to pay according to the plan[.]").

Second, Defendants argue that Vargas's Motion does not account for his financial status because it does not indicate the amount of funds in his trust account at the prison. Opp. at 10:5–13. Vargas's IFP Application indicates that he has no income, no assets, no financial resources, an average of $254.06 deposited into his prison trust account over the past six months, and that he owes over $12,000 in restitution—this is sufficient to analyze his financial resources. *See* ECF No. 2; *Washburn*, 2008 WL 361048, at *2 (finding that plaintiff's sworn statements in his IFP

7

application show that "it would be incredibly difficult, if not impossible, for [him] to pay the $16,269.71 costs taxed to him in this action"). Further, had Vargas received a windfall in his trust account, he surely would not still be paying for his filing fee; yet Vargas is doing just that. *See* Vargas Decl. ¶ 3.

Finally, Defendants argue that the Court "should not reward Vargas for losing his work assignment in considering his ability to pay a costs award" because "it was Vargas's choice to forgo his work to appear at trial [which] is what likely caused him to be reassigned from his work assignment." Opp. at 10:14–21. Defendants cannot be serious. A party's unemployed status is a salient factor in determining whether an award of costs would render that party indigent—the reason for unemployment is immaterial. *See Stanley*, 178 F.3d at 1080 (explaining that the mere fact that the plaintiff "had not obtained employment at the time of the filing of the cost bill is persuasive evidence of the possibility she would be rendered indigent should she be forced to pay" defendants' costs). But more importantly, the Court will not punish Vargas for exercising his Constitutional right to access the federal court system. *See* Reply at 3:7–9; *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 705–06 (9th Cir. 1992) ("[P]risoners have a constitutional right of access to the courts. . . . prisoner cases are founded in large part on the importance of the rights concerned and the prisoners' inability to vindicate them through non-judicial pathways.") (cleaned up).

Therefore, this factor weighs in favor of denying costs.

### 2. Public Importance Of The Case

Vargas argues that his "civil rights lawsuit, which scrutinizes the taxpayer-funded 'rehabilitation facility' in which he is incarcerated, raises an issue of significant public importance." Mot. at 3:18–4:6. Defendants contend that it was them, not Vargas, who "furthered the public interest by defending against Vargas's claims." Opp. at 5:18–6:8.

Courts are more likely to deny costs in cases having "substantial public importance." *Draper*, 836 F.3d at 1088. "[A] case is considered to be of great importance when the claims involved are subject to closer scrutiny or special interest by the court, or the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the

litigation." *Ayala v. Pac. Mar. Ass'n*, No. C08-0119-TEH, 2011 WL 6217298, at *3 (N.D. Cal. Dec. 14, 2011).

      Here, the Court finds that this case has substantial public importance. Vargas's case involved constitutional claims related to his incarceration, including under the First and Eighth Amendments. Mot. at 3:18–22; *see* ECF No. 1. The Court agrees with Vargas that his case touched on vital issues of "the right to be protected while incarcerated, and the right to petition for redress of grievances without fear of retaliation." Mot. at 4:3–6; *see Draper*, 836 F.3d at 1088 (holding individual Eighth Amendment cases have "substantial public importance" because they are important for safeguarding the rights and safety of incarcerated persons); *Lopez v. Nguyen*, No. 13-cv-3870-CRB, 2017 WL 512773, at *2 (N.D. Cal. Feb. 8, 2017) (finding that a section 1983 claim of excessive force by a law enforcement officer "is an issue of substantial public importance"); *Branch v. Umphenour*, No. 1:08-cv-01655-SAB(PC), 2017 WL 1198537, at *2 (E.D. Cal. Mar. 30, 2017) (finding that plaintiff's First and Eighth Amendment claims "implicate important prisoner rights and are of substantial public importance"); *cf. Henneberry v. City of Newark*, No. 13-cv-05238-TSH, 2024 WL 2304239, at *2 (N.D. Cal. May 21, 2024) (declining to award costs where "[p]laintiff's case involved constitutional claims related to his arrest and incarceration, including the First and Fourth Amendments").

      Defendants do not dispute the public importance of cases involving constitutional claims brought by incarcerated persons. Opp. at 5:21–24. Instead, Defendants argue that this factor favors awarding costs because Defendants, "in successfully defeating Vargas's claim have more thoroughly vindicated a public interest than Vargas—showing the absence of improper prison operations." *Id.* at 5:25–6:8. The problem with this argument is that the jury made no finding that "Defendants were acting in a manner that furthered the public interest of ensuring prison operations consistent with civil rights[.]" *Id.* at 6:3–7; *see* ECF No. 158 (Jury Verdict Form). While the jury did not find Defendants liable on Vargas's claims, this is not tantamount to finding that "prison operations" were devoid of impropriety.

      Therefore, this factor weighs in favor of denying costs.

9

### 3. Chilling Effect On Future Actions

Vargas argues that "taxing costs against Vargas will chill future similar cases." Mot. at 4:7–5:12. Defendants contend that awarding them costs would not chill potential civil rights plaintiffs. Opp. at 4:8–26.

In civil rights cases, district courts must consider the chilling effect of imposing high costs on future civil rights litigants. *Stanley*, 178 F.3d at 1079. "Imposing high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation and the vindication of important rights under civil rights laws." *Lopez*, 2017 WL 512773, at *3. Notably, "[w]ithout civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since [*Brown v. Board of Education*]." *Economus v. City and Cnty. of San Francisco*, No. 18-cv-01071-HSG(DMR), 2019 WL 3293292, at *3 (N.D. Cal. July 5, 2019) (quoting *Stanley*, 178 F.3d at 1080).

Here, the Court finds that an award of costs for Defendants would discourage plaintiffs in similarly situated financial circumstances from filing a case that involves an essential civil right. Defendants seek over $12,000 in costs from an incarcerated individual with no job and no other income or financial support. Vargas Decl. ¶¶ 11, 14–15. Indeed, in similar circumstances where costs are sought against individuals of financially limited means, the Ninth Circuit has warned against imposing such costs, expressing concern that the award could chill future civil rights litigation. *See Escriba*, 743 F.3d at 1247–49 (affirming denial of costs of $13,958.16 where the plaintiff's annual income was $11,622 because the amount in the context of the plaintiff's financial status would present a "serious danger" of chilling future civil rights actions); *Draper*, 836 F.3d at 1088–89 (holding that an award of costs against an individual with virtually no financial resources in the amount of $3,018.35 was an abuse of discretion because such a large cost award could potentially chill similar civil rights lawsuits). Defendants barely argue otherwise and point to a single district court case holding that an award of costs "against a prisoner plaintiff does not chill potential civil rights plaintiffs." Opp. at 4:8–15 (citing *Garcia v. Moreno*, No. 1:18-cv-00014-DAD-SAB(PC), 2021 WL 366865, at *2 (E.D. Cal. Feb. 3, 2021)). But unlike in *Garcia*, Vargas did not fail to exhaust his administrative remedies. *See Garcia*, 2021 WL 366865,

at *2 ("[T]he Court finds any chilling effect to be minimal given the law clearly establishes that exhaustion of the administrative remedies must be done prior to filing suit."). Defendants' lone case is thus inapposite.

Further, Defendants' argument that ordering costs "would not disincentivize similar lawsuits" because Vargas deployed "a discovery tactic unavailable to most *pro se* prisoners" is misplaced. Opp. at 4:16–26; *see* Reply at 6:17–18. This factor does not assess the chilling effect "on any particular litigant," such as one like Vargas represented by *pro bono* counsel, but instead looks at "a general group of would-be litigants" with similar claims. *Uribe*, 2016 WL 5930269, at *2 (cleaned up). Vargas's individual circumstances are thus immaterial to this factor.

Therefore, this factor weighs in favor of denying costs.

### 4. Economic Disparity Between The Parties

Vargas argues that that "the economic disparity between the parties' resources is massive and cannot be ignored." Mot. at 6:17–7:10. Defendants acknowledge that the state of California indemnifies Defendants for costs but contend that the "economic disparity of parties does not override the presumption of awarding costs." Opp. at 8:1–9:19.

In assessing whether an award of costs is appropriate, district courts should consider the "economic disparity between the parties." *Escriba*, 743 F.3d at 1249 (cleaned up). Any economic disparity between the parties weighs against awarding costs. *Lopez*, 2017 WL 512773, at *3. District courts in the Ninth Circuit routinely find that considerable economic disparity exists between incarcerated plaintiffs and government officials. *See, e.g., id.*; *Sewell v. Cornwell*, No. 2:18-cv-02988-JAM-DBP, 2021 WL 663715, at *2 (E.D. Cal. Feb. 19, 2021).

Here, the Court finds that significant economic disparity exists between Vargas and the Defendants, whose costs are covered by the state of California. *See* Opp. at 8:3–7; Reply at 4:7–16; *cf. Baltimore*, 2014 WL 804463, at *2 ("Plaintiff's *in forma pauperis* and incarceration status makes the financial disparity between him and Defendant (a free, employed person, whose defense bills were undoubtedly paid by his employer) self-evident."); *Davis v. Pinterest, Inc.*, No. 19-cv-07650-HSG, 2023 WL 8812871, at *1 (N.D. Cal. Dec. 20, 2023) ("Paying the bill of costs would cause significant hardship to Plaintiff, an individual, whereas Defendant is a public company with

11

1  billions of dollars in revenue."); *M. M.*, 2020 WL 3251175, at *2 ("Courts considering litigation
2  against an 'individual of very limited means' and a county entity has found that there is a
3  'significant economic disparity.'") (cleaned up).  As in *Draper*, where the Ninth Circuit found
4  great economic disparity existed between the parties, Vargas "is an indigent civil rights plaintiff
5  represented by pro bono counsel who filed an action against government officers." *Lopez*, 2017
6  WL 512773, at *3 (citing *Draper*, 836 F.3d at 1089).

   Defendants assert that this "was not the David versus Goliath showdown Vargas argues
   this case to be."  Opp. at 8:21.  The Court disagrees.  "There is no comparison between [Vargas's]
   limited resources and those of the state of California, which bore the defense costs." *Draper*, 836
   F.3d at 1089 (alteration added).  Put another way, "the economic disparity between the parties—a
   prisoner and a state entity—is about as great as one might envision." Mot. at 6:17–21.  Moreover,
   Defendants' argument that this factor weighs in their favor because "Vargas does not submit
   evidence to establish a disparity of wealth between him and the individual Defendants" falls flat.
   Opp. at 9:4–14.  It is the State of California that seeks payment of costs, not the individual
   Defendants.  *Id.* at 8:3–7; *cf. Washburn*, 2008 WL 361048, at *2 n.7.  And in any event, Officer
   Lopez-Ortega and Lieutenant Whitman are gainfully employed while Vargas is not.  This alone
   demonstrates an economic disparity exists between Vargas and the individual Defendants.

   Therefore, this factor weighs in favor of denying costs.

### 5. Closeness And Difficulty Of The Issues

Vargas argues that his case had merit and was close.  Mot. at 7:11–8:5.  Defendants contend that "Vargas's claims were not close and the issues were not difficult."  Opp. at 6:9–7:28.

Where the issues in a case are "close and complicated," this factor weighs in favor of denying costs.  *Escriba*, 743 F.3d at 1248.  "This factor permits the court to evaluate the merits of a losing plaintiff's case and the strength of the evidence he was able to muster in determining whether costs should be taxed."  *Berry v. City & Cnty. of San Francisco*, No. 17-cv-00056-EDL, 2018 WL 5733680, at *2 (N.D. Cal. Oct. 29, 2018) (citing *Escriba*, 743 F.3d at 1248).  "A case is 'close' when it survives summary judgment and the case turns on 'which competing accounts of events the jurors believed.'"  *Id.* (citing *Draper*, 836 F.3d at 1088).  A complicated issue is one

12

that involves "an important legal question that turns on the careful evaluation of witness testimony and circumstantial evidence." *Escriba*, 743 F.3d at 1248.

Here, the Court finds that the issues in the case were close, and that Vargas's claims were not frivolous. First, the Court's twenty-nine-page order denying Defendants' motion for summary judgment demonstrates the closeness of the issues. *See* ECF No. 56; *cf. Draper*, 836 F.3d at 1088 ("Draper's evidence of an Eighth Amendment violation was sufficient to survive summary judgment."); *M. M.*, 2020 WL 3251175, at *3 ("The closeness of the issues and the arguments made by both sides is evidenced by the fact that it took the Court more than twenty pages to explain its reasoning for granting defendants' summary judgment motion."). Second, jury deliberations, which lasted for more than a full day, support the conclusion that the issues were close and turned on witness credibility. *See* ECF No. 162; Reply at 7:11–27; *cf. Draper*, 836 F.3d at 1088 (finding "case turned on which competing account of events the jurors believed" where "[a]fter closing arguments, the jury deliberated for the remaining half-day and then for several more hours the next morning before returning a verdict"). In short, "[a]lthough the jury rendered a verdict in favor of Defendants, this result was far from guaranteed." *Cf. Moujaes v. San Francisco City & Cnty.*, No. 15-cv-03129-DMR, 2017 WL 1540732, at *3 (N.D. Cal. Apr. 28, 2017).

Defendants' arguments to the contrary are unavailing. First, Ninth Circuit caselaw clashes with Defendants' proposition that "surviving summary judgment does not indicate a case was close." Opp. at 6:15–22; *see Draper*, 836 F.3d at 1088. Second, Defendants parse too finely the jury's deliberations in asserting that the case was not close because the jury deliberated for "442 minutes" when there were "11 witnesses and over 900 pages of admitted exhibits." Opp. at 7:3–18. Defendants cite to no authority requiring the Court to analyze jury deliberations as a function of trial time or the volume of evidence. *See* Reply at 7:22–27. In fact, the Ninth Circuit has held that a case's closeness is a function of the total amount of time spent in jury deliberations. *See Draper*, 836 F.3d at 1088. Finally, this factor does not require that the issues be both close *and* difficult to weigh against ordering costs—it is enough that the issues were close. *See* Opp. at 7:19–27 ("[T]he issues in this case were not difficult."); *Draper*, 836 F.3d at 1088 ("In addition, the case was close.").

Therefore, this factor weighs in favor of denying costs.

### 6. Other Considerations

Defendants argue that "[a]warding costs to Defendants would disincentivize plaintiffs from engaging in litigation tactics like Vargas's, which included wasteful discovery practices, meritless allegations of bad faith, and unnecessary depositions." Opp. at 4:7–5:17. Vargas responds that "Defendants' criticisms of Vargas's litigation strategy do not establish bad faith." Reply at 8:9–10:12.

Here, the Court finds that Defendants fail to show that Vargas engaged in misconduct during litigation. To be sure, courts consider any bad faith litigation tactics by the parties when deciding whether to award costs. *See, e.g., Garcia*, 2021 WL 366865, at *2. But as Vargas points out, "[a]t no point during the case did the Court impose penalties, issue sanctions, or find that Vargas acted with an improper purpose." Reply at 10:8–12. Defendants offer no evidence to support their claim that Vargas litigated the case in bad faith.

Therefore, Defendants have not shown that Vargas's conduct during litigation justifies an award of costs against Vargas.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Vargas's Motion to Strike Costs.

**IT IS SO ORDERED.**

Dated: December 31, 2025

THOMAS S. HIXSON
United States Magistrate Judge